NANTUCKET LAND COUNCIL, INC. & others *vs.* PLANNING BOARD OF NANTUCKET & others.[1]

Nantucket.    February 17, 1977. — March 30, 1977.

Present: KEVILLE, GRANT, & BROWN, JJ.

*Practice, Civil,* Appeal.   *Pleading, Civil,* Complaint.   *Subdivision Control.   Jurisdiction,* Subdivision control, Damage to the environment. *Notice.    Public Board.    Open Meeting Law.    Municipal Corporations,* Open meetings.

An appeal under G. L. c. 41, § 81BB, could not be maintained where the plaintiffs failed to give the town clerk written notice of the appeal within the twenty-day period following the date of the recording of the planning board's decision in the clerk's office. [208-211]
The provisions of G. L. c. 41, § 81Y, could not be invoked to overturn a decision by which a planning board acted under § 81U to approve a definitive plan of subdivision; section 81BB is the exclusive remedy with respect to such action. [211-213]
A request for injunctive relief under G. L. c. 39, § 23C, as amended by St. 1974, c. 83, was properly dismissed where the plaintiffs failed to file their complaint within fourteen days of the date that the challenged planning board action was taken. [213-214]
A complaint under G. L. c. 214, § 7A, which failed to set forth an affirmative allegation that "damage to the environment is occurring or is about to occur" was properly dismissed. [214-216]

CIVIL ACTION commenced in the Superior Court on September 17, 1975.

The case was heard by *Ford,* J., on motions to dismiss.

*Alan H. Kaufman* for the plaintiffs.

*James M. Hughes* for Harriet W. Backus (*Charles A.*

---

[1] The board of health of the town and Harriet W. Backus.

*Goglia, Jr.,* Town Counsel, for the Planning Board of Nantucket & another, with him).

GRANT, J.   This is an amended complaint (complaint) in the Superior Court by which various plaintiffs (or groups of plaintiffs) seek to pursue four distinct routes in their efforts to overturn a decision made by the planning board of Nantucket on September 2, 1975, by which that board approved a definitive plan of subdivision (G. L. c. 41, § 81U) of certain land owned by the defendant Backus and lying in the Wauwinet section of the town. Those routes are: (1) an appeal under G. L. c. 41, § 81BB; (2) an action of an equitable nature under G. L. c. 41, § 81Y; (3) a proceeding under G. L. c. 39, § 23C, as in effect prior to St. 1975, c. 303, § 3; and (4) an action under G. L. c. 214, § 7A. The defendants moved to dismiss under Mass.R.Civ.P. 12 (b) (1) and (6), 365 Mass. 755 (1974).

The matter was heard and determined by a judge of the Superior Court on the complaint and the opposing affidavits submitted by the parties.[2] The judge ruled that "[t]here is no factual dispute as to the issues raised by the motions" and ordered the entry of a judgment dismissing the action in all its aspects. The plaintiffs appealed from that order. The appeal must be dismissed because no "final judgment" (G. L. c. 231, § 113, as appearing in St. 1973, c. 1114, § 202) has yet been entered. See Mass.R.A.P. 3 (a), 365 Mass. 845 (1974), which is cast in terms of "[a]n appeal *permitted by law*" (emphasis supplied). However, as the order for judgment is in such form that a judgment of dismissal may now be entered by the clerk without further action on the part of the judge

---

[2] It does not appear from anything found in the record, or even from anything found in either of the plaintiffs' briefs, that anyone objected to the procedure by which the case was decided below. Accordingly, we do not consider any of the procedural irregularities now asserted by the plaintiffs. *Royal Indemnity Co.* v. *Blakely,* 372 Mass. 86, 87-88 (1977). Nor do we consider any of the factual assertions in the briefs which find no support in the record. *Currens* v. *Assessors of Boston,* 370 Mass. 249, 254 (1976).

(see Mass.R.Civ.P. 58[a] [1], 365 Mass. 826 [1974]), we proceed to consider by way of dictum (*Giacobbe* v. *First Coolidge Corp.* 367 Mass. 309, 314 [1975]) certain of the contentions argued by the parties.[3]

We find at least one insurmountable obstacle along each of the routes selected by the various plaintiffs (or groups of plaintiffs) in their efforts to overturn the decision of the planning board and prevent the consummation of the proposed development.

1. We consider first whether there has been compliance with the requirements of the first sentence of G. L. c. 41, § 81BB (as appearing in St. 1953, c. 674, § 7), which reads in pertinent part as follows: "Any person, whether or not a party to the proceedings, aggrieved ... by any decision of a planning board concerning a plan of a subdivision ... may appeal to the superior court ... for the county in which the land concerned is situated; provided, that such appeal is entered within twenty days after such decision has been recorded in the office of the city or town clerk ... and notice of such appeal is given to such city or town clerk so as to be received within such twenty days." It is settled that compliance with the notice requirement within the twenty-day period is a jurisdictional prerequisite to the prosecution of an appeal under § 81BB. *Carey* v. *Planning Bd. of Revere*, 335 Mass. 740, 745 (1957), *S.C.* 335 Mass. 746 (1957). *Cohen* v. *Board of Registration in Pharmacy*, 347 Mass. 96, 98 (1964). Compare *Pierce* v. *Board of Appeals of Carver*, 369 Mass. 804, 809 (1976); *Marvin* v. *Board of Appeals of Medfield*, post, 772 (1977).[4]

The Subdivision Control Law is a "comprehensive statutory scheme." *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading*, 360 Mass. 677, 679 (1971). *Cassani* v. *Planning Bd. of Hull*, 1 Mass. App. Ct. 451, 458 (1973).

---

[3] No brief has been filed in behalf of either of the town boards.

[4] The *Pierce* and *Marvin* cases, like numerous others which will be cited in the course of our opinion, were decided under the provisions of G. L. c. 40A, § 21, as in effect prior to St. 1975, c. 808, § 3 (see now G. L. c. 40A, § 17, as appearing in said § 3). Compare *Strand* v. *Planning Bd. of Sudbury, ante,* 18, 21-23 (1977).

"The intention of relevant sections of the Subdivision Control Law is to set up an orderly precedure for definitive action within stated times, and for *notice* of that action in *offices of record* within stated times, so that all concerned may rely upon *recorded* action or the absence thereof within such times. See G. L. c. 41, §§ 81V, 81W, 81X, *81BB*, 81EE" (emphasis supplied). *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 125 (1964). *Cassani* v. *Planning Bd. of Hull,* 1 Mass. App. Ct. at 457. "The provision for notice to the clerk is ... designed to give to third persons who may be concerned with the land at least constructive notice of the appeal, which, if sustained, may invalidate an outstanding, apparently valid plan." *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 745. Compare *McLaughlin* v. *Rockland Zoning Bd. of Appeals,* 351 Mass. 678, 680 (1967); *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. 37, 39 (1969); *Carr* v. *Board of Appeals of Saugus,* 361 Mass. 361, 362 (1972); *Pierce* v. *Board of Appeals of Carver,* 369 Mass. at 808; *Costello* v. *Board of Appeals of Lexington,* 3 Mass. App. Ct. 441, 443 (1975).

With these principles in mind we proceed to summarize the facts which appear in or which can properly be inferred from the allegations of the complaint and the opposing affidavits. The decision of the planning board in this case was filed in the office of the town clerk on September 3, 1975. On September 17, 1975, the president of the plaintiff Nantucket Land Council, Inc.,[5] entered the office of the town clerk with the original of the complaint in this matter and requested the clerk, acting as a notary public, to take his (the president's) oath to the truth of the allegations of the complaint. The clerk did so, affixing his signature and notarial seal on the last page of the complaint. The clerk has sworn (without contradiction) that

---

[5] We do not decide whether this particular plaintiff is a "person aggrieved" within the meaning of § 81BB. See *Amherst Growth Study Committee, Inc.* v. *Board of Appeals of Amherst,* 1 Mass. App. Ct. 826 (1973); *Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 213-215 (1975).

he "took no notice of the content of the document and recall[s] seeing no portion of the complaint other than the signature page," which contains prayers for preliminary injunctive relief against the defendant Backus and a prayer that "the decision of the [p]lanning [b]oard ... be annulled." It does not appear, nor is it asserted in any of the affidavits submitted in behalf of the plaintiffs, that the clerk actually read any part of the complaint, although it is arguable that he had an opportunity to read the complaint in its entirety. The complaint was then taken from the clerk and was thereafter timely entered in the Superior Court on the same day, September 17.[6]

An article on the front page of the September 18 edition of the weekly newspaper published in the town announced the entry of the appeal and its objective, identified the parties, and contained a reference to the locus covered by the subdivision plan which had been approved by the planning board on September 2. The town clerk was a subscriber to the newspaper, both at the town office and at his home,[7] and copies were mailed to him at both addresses on September 18. The record is silent as to whether the clerk ever read the newspaper. There is no dispute that none of the plaintiffs gave the clerk any written or other form of notice of the appeal until some time after September 23, 1975. If the clerk did learn of the appeal before that date, he made no record of that fact in his office. If the clerk ever did receive a copy of the complaint,[8] it was not until after September 23.

There is no obligation on the part of a town clerk to make any investigation as to whether an appeal has been filed in court (see and compare *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 747) or to make a record of any fact

---

[6] It seems that either the notice to the town clerk or the entry of the appeal in court may precede the other, so long as both are properly accomplished within the twenty-day period set out in § 81BB. See *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 745.

[7] See *Garfield* v. *Board of Appeals of Rockport,* 356 Mass. at 39.

[8] See *Carr* v. *Board of Appeals of Saugus,* 361 Mass. at 362-363.

Nantucket Land Council, Inc. *v.* Planning Board of Nantucket.

he may learn from a newspaper he is not required to read. There is no room for doubt that it is the plaintiff, who has the burden of entering the appeal in court, who must give the clerk the notice which is required by § 81BB. The plaintiff must do more than give the notice; the clerk must actually receive the notice within the twenty-day period after the "decision [of the planning board] has been recorded in ... [his] office." The teaching of the portion of the *Pembroke* case which has already been quoted (348 Mass. at 125) is that the notice is something which is also to be recorded, which must necessarily be so if the notice is to serve its intended purpose of providing constructive notice of the appeal to third persons who may be concerned with the land. See the *Carey* case, 335 Mass. at 745.

It would seem that only a written notice to the clerk which he records upon its receipt would (a) serve the purpose last mentioned and (b) provide the Superior Court with a simple means of determining its jurisdiction to hear the appeal without the necessity of holding a preliminary hearing such as that which was required in the present case. We need not decide that point in order to dispose of this aspect of the present case. It is enough that nothing found in any of the affidavits submitted in behalf of the plaintiffs was sufficient to raise a dispute as to the fact that none of the plaintiffs gave the town clerk any notice of the appeal within the twenty-day period following the date of the recording of the planning board's decision in the clerk's office. *Boston Police Patrolmen's Assoc. Inc.* v. *Police Commr. of Boston,* 4 Mass. App. Ct. 673, 675 (1976).

2. The plaintiffs, who include among their number ten taxpayers of the town of Nantucket, also seek to overturn the decision of the planning board by proceeding under the last paragraph of G. L. c. 41, § 81Y, as appearing in St. 1953, c. 674, § 7.[9] The complaint in this matter does not

---

[9] "The superior court for the county in which the land affected by any of the provisions of the subdivision control law lies shall have jurisdiction ... [1] on petition of the planning board of a city or town, or of ten taxable inhabitants thereof, [a] to review any action of any municipal board or officer of such city or town in disregard of the pro-

allege a violation (or even a contemplated violation) of any provision found in any of the four preceding paragraphs of § 81Y, and we note at the outset that there is a question whether the Legislature intended that the remedy afforded to "ten taxable inhabitants" should apply to both of what might be regarded as two separate and distinct branches of jurisdiction granted to the Superior Court. See note 9, *supra.* However that question should be resolved, it is clear that no case decided under or with reference to § 81Y has held that its provisions may be invoked to overturn a decision by which a planning board has acted under G. L. c. 41, § 81U, to approve a definitive plan of subdivision, either with or without conditions. See *Carey* v. *Planning Bd. of Revere,* 335 Mass. at 742-743; *Bloom* v. *Planning Bd. of Brookline,* 346 Mass. 278, 283 (1963); *Cassani* v. *Planning Bd. of Hull,* 1 Mass. App. Ct. at 458.

There are good reasons why this is so. General Laws c. 41, § 81BB, is explicit on the point that the "exclusive" remedy with respect to "any decision of a planning board concerning a plan of a subdivision" "shall be" as provided in that section. See *Rounds* v. *Water & Sewer Commrs. of Wilmington,* 347 Mass. 40, 45 (1964); *Marino* v. *Board of Appeal of Beverly,* 2 Mass. App. Ct. 859, 860 (1974). Compare *Smith* v. *Board of Appeals of Plymouth,* 340 Mass. 230, 232 (1960); *Saab* v. *Building Inspector of Lowell,* 1 Mass. App. Ct. 87, 88 (1973); *Costello* v. *Board of Appeals of Lexington,* 3 Mass. App. Ct. at 445. We have already seen (part 1, *supra*) that one of the purposes of the § 81BB requirement of notice of an appeal to the town

---

visions of *this section* and to annul and enjoin such action, [b] to enjoin the erection of a building in violation of *this section,* and [2] *otherwise* to enforce the provisions of the subdivision control law and any rules or regulations lawfully adopted and conditions on the approval of a plan lawfully imposed thereunder, and may restrain by injunction violations thereof or make such decrees as justice and equity may require. No proceeding under this paragraph shall be instituted more than one year after the act or failure to act upon which such petition is based" (emphasis supplied). The numbers and letters in brackets have been inserted for ease of reference.

clerk within twenty days of the recording of the decision of the planning board with the clerk is to advise third persons whether they may deal safely with land which is covered by an approved plan of subdivision. We now note that the entire scheme for the recording or registration of approved subdivision plans (G. L. c. 41, § 81X) and for the issuance of building permits with respect to lots in approved subdivisions (§ 81Y, second par.) would be set at naught if ten taxpayers were to be given a year (§ 81Y, last sentence; n.9, *supra*) in which to launch an attack on a planning board's approval of a subdivision plan.

The judge was entirely correct in ordering this aspect of the case dismissed.

3. The plaintiffs (who include at least three registered voters of the Commonwealth) have alleged that the vote of the planning board to approve the subdivision plan was taken on September 2, 1975, in secret at an executive session held contrary to the provisions of G. L. c. 39, § 23A, as then in effect. They argue that they should have been permitted to proceed under the first sentence of G. L. c. 39, § 23C, as amended by St. 1974, c. 83 ("An Act extending the remedy in case of non-compliance with the law requiring certain meetings to be open to the public"), to secure an order invalidating the vote of the planning board.[10] It was not until the effective date of the 1974 statute that the Superior Court was granted jurisdiction, in the exercise of its discretion, to "invalidate any action taken at any meeting which violates the provisions of" c. 39 of the General Laws. See *Elmer* v. *Board of Zoning Adjustment of Boston,* 343 Mass. 24, 25-27 (1961); *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 552-553 (1962); *Reilly* v. *Selectmen of Framingham,* 345 Mass. 363, 366 (1963). That jurisdiction was granted on the express proviso "that [the necessary] petition ... [be]

---

[10] We pass the point that the only prayer for relief which makes any reference to this subject is one for an order that the "defendant [b]oard be enjoined henceforth and hereafter to comply with G. L. c. 39, § 23A."

filed within fourteen days of the date when *said action is taken*" (emphasis supplied). As we read the 1974 statute, the fourteen-day period ran from the date of the forbidden "action," and not from the date when such action was (a) made public, (b) discovered by the plaintiff, or (c) intended to take effect. On this record the "action" complained of was the vote taken by the planning board on September 2, 1975. The date of that vote was disclosed on the face of the decision of the planning board which was filed in the town clerk's office on September 3, 1975. The complaint was not filed in court until September 17, 1975.

The plaintiffs point to the amendments of the Open Meeting Law which were effected by St. 1975, c. 303, § 3, which did not take effect until January 1, 1976 (St. 1975, c. 303, § 5), a date some two weeks after the entry of the order for dismissal of the present action. The twelfth paragraph of the new G. L. c. 39, § 23B (as appearing in St. 1975, c. 303, § 3) has the fourteen-day period running from "the date when such action is made public." The 1975 statute ("An Act further regulating meetings of governmental bodies") is grounded on a concept quite different from that of the 1974 statute, and we do not think this is an instance in which it can properly be said that a later statute was intended to clarify an ambiguity found in an earlier statute. Compare *Brooks* v. *School Comm. of Gloucester, ante,* 158, 160-161 (1977). Contrast *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. at 124-125, 127.

We conclude that the order for judgment was also correct with respect to this aspect of the case.

4. We consider only one point in connection with the effort by ten domiciliaries of the Commonwealth to proceed under the third paragraph of G. L. c. 214, § 7A, as appearing in St. 1973, c. 1114, § 62.[11] It is settled that

---

[11] "The superior court for the county in which damage to the environment *is occurring or is about to occur* may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs ... determine whether such damage *is occurring or is about to*

"[i]n order to invoke the jurisdiction of the Superior Court under [what is now § 7A] there must be an allegation that 'damage to the environment is occurring or is about to occur.'" *Boston* v. *Massachusetts Port Authy.* 364 Mass. 639, 645 (1974). We find no such allegation in the present complaint.

The nearest approach to such an allegation is an assertion that at the hearing before the planning board it "received a letter from the Nantucket Conservation Commission, dated August 18, 1975, indicating that the ... [defendant Backus] had caused a substantial gash to be excavated in the sand dunes comprising the subdivision, and that ... [she] had caused such work to be done in violation of the wetlands protection act, G. L. c. 131, § 40, the subdivision control law, G. L. c. 41, §§ 81K-81GG,[12] and that the violation had continued unabated up to the time of said hearing." The quoted assertion cannot be taken as an affirmative allegation that the defendant Backus had in fact caused a substantial gash to be excavated in the dunes, or that any excavation continued to exist at the time of the filing of the complaint. *Waldor Realty Corp.* v. *Town Clerk of Bellingham,* 350 Mass. 669, 670, 671 (1966). One of the conditions of the planning board's approval of the subdivision plan was that "all

---

*occur* and may ... restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment" (emphasis supplied). The predecessor of § 7A was G. L. c. 214, § 10A, inserted by St. 1971, c. 732, § 1, and amended by St. 1972, c. 219.

[12] We express no opinion on the question whether the "major purpose" of the Subdivision Control Law or of rules and regulations adopted under G. L. c. 41, § 81Q, is to "prevent or minimize damage to the environment" within the meaning of § 7A. See *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 637, 640-641 (1970), S. C. 369 Mass. 512, 514 (1976); *Dolan* v. *Board of Appeals of Chatham,* 359 Mass. 699, 701 (1971); *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 227-229, 234-235 (1972), cert. den. 409 U.S. 1108 (1973); *Chira* v. *Planning Bd. of Tisbury,* 3 Mass. App. Ct. 433, 438 (1975); *Hamilton* v. *Planning Bd. of Lexington,* 4 Mass. App. Ct. 802, 803 (1976).

public improvements shown on the plan and made a part of the covenant with the [b]oard be approved by the Conservation Commission in accordance with the State Wetlands Protection Act (chapter 131 of the General Laws, Section 40, as amended)."[13] There is no allegation that the defendant Backus intends to violate that condition.[14]

We do not think the judge is now to be faulted for concluding that the complaint fails to allege that damage to the environment "is occurring or is about to occur" within the meaning of G. L. c. 214, § 7A. Any amendment of the complaint in order to set out facts from which the Superior Court might be able to determine the existence of jurisdiction under § 7A is within the discretion of that court.[15] See *Charbonnier* v. *Amico,* 367 Mass. 146, 153-154 (1975); *Caine* v. *Commonwealth,* 368 Mass. 815, 816 (1975); *Balsavich* v. *Local 170, International Brotherhood of Teamsters,* 371 Mass. 283, 287-288 (1976).

*Appeal dismissed.*

---

[13] Compare *Rounds* v. *Water & Sewer Commrs. of Wilmington,* 347 Mass. at 45.

[14] The complaint also contains several references to G. L. c. 111, § 127M. It appears to have escaped the attention of all the parties that that section was repealed effective five days after the filing of the complaint (see St. 1975, c. 615), possibly because of redundancy with the provisions of the State Sanitary Code. See *Fairbairn* v. *Planning Bd. of Barnstable, ante,* 171, 183-185 (1977).

[15] We were told at argument that the defendant Backus has now obtained some sort of approval from the conservation commission but that the validity of that approval has also been placed in litigation.