MARIA PUGLISI & others[1] *vs.* SCHOOL COMMITTEE
OF WHITMAN & another.[2]

Plymouth. September 10, 1980, November 14, 1980. — January 8, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Open Meeting Law. School and School Committee,* Open meetings,
Appointment of personnel. *Public Board.*

In an action against a school committee for violation of the open
meeting law, G. L. c. 39, §§ 23A-23C, evidence that, after the com-
mittee had held a public hearing concerning charges against an
elementary school principal, the committee went into executive ses-
sion, at the request of the superintendent of schools, purportedly to
discuss the superintendent's reputation and character which had not
been put in issue at the hearing warranted a finding that the executive
session was a sham and constituted a distortion of the provisions of
c. 39, § 23B (1). [143-145]
Although a judge was authorized by G. L. c. 39, § 23B, to invalidate
the action of a school committee in discharging a school principal at a
meeting which violated the open meeting law and to require that the
principal receive back pay from the date of the discharge, the judge ex-
ceeded his authority in ordering the committee to reinstate the
employee to his former position as principal. [145-147]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 28, 1978.

The case was heard by *Good,* J.

*Paul F. Kenney* for the defendants.

*William H. Shaevel (Kenneth A. Krems* with him) for the
plaintiffs.

---

[1] Eight other registered voters of Whitman. The Puglisi referred to in
this opinion is not Maria Puglisi but Horace Puglisi; the latter was the sub-
ject of the school committee's action.

[2] John F. DeCosta, superintendent of schools of Whitman.

KASS, J.   More than three registered voters brought a complaint against the school committee of Whitman, alleging a violation of the open meeting law, G. L. c. 39, §§ 23A-23C, as amended through St. 1978, c. 372, §§ 9 to 12.   We agree with the trial judge that an executive session held by the school committee offended against the statute, and that it was appropriate to invalidate the action taken by the committee.   Lest the language of that portion of the judgment entered as dealt with "reinstatement" of a discharged school principal be misconstrued, we modify the judgment.

From the judge's findings of fact, which we accept unless clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816, 816-817 (1974), we learn that on November 6, 1978, the school committee held a public hearing concerning charges against Horace Puglisi, an elementary school principal, and to consider whether Puglisi should be dismissed or otherwise disciplined.[3]   The hearing began at 8:00 P.M.   By 1:00 A.M. the presentation of evidence and the school committee were exhausted.   The committee voted to reconvene that evening (November 7), which was also the date of a regular school committee meeting, and at that time to "render a decision regarding Mr. Puglisi's continued employment."   When the school committee turned its attention that night to the charges against Puglisi, the superintendent of schools requested that the committee go into executive session for the purpose of discussing his, i.e. the superintendent's, reputation and character.   Up to that point, the reputation and character of the superintendent had not been put in issue and it was Puglisi, not the superintendent, who was the subject of dismissal proceedings.

As to matters of form, the school committee turned its corners squarely.   Its chairman asked the superintendent for

---

[3] Puglisi had only served in the Whitman school system sixty-seven days when the discharge hearings began.   He was, therefore, subject to dismissal without hearing procedures.   G. L. c. 71, § 42.   The parties agree that, however the school committee elected to proceed, it was bound to conduct its business conformably with the open meeting law.

a written waiver of the forty-eight-hour notice which must precede any executive session called for purposes of discussing the reputation, character, physical condition or mental health of an individual. G. L. c. 39, § 23(B) (1). As counsel for the school committee observed in its brief on appeal, the committee followed the letter of the law. The trial judge found that as a matter of substance, however, the executive session was a sham. He inferred from the timing of the executive session and from testimony as to what transpired at that session that the superintendent seized the occasion to have the last word with the school committee and to do so in private.

This was a permissible inference. It would test even a generous credulity to suppose that, at the brink of the vote on Puglisi, the superintendent was for reasons having nothing to do with that matter overcome with a compulsion to share with the committee his reflections on his own reputation and character. Moreover, we agree with the judge that the maneuver represented a distortion of the statute. It is apparent that the design of the exception which appears in § 23B(1) is to enable a public body to engage in candid discussion about the character and reputation of an individual who is the subject of potential action by that public body. For this reason, subparagraphs *(a)* and *(b)* of § 23B(1) entitle the subject individual to be present at the closed session and to have counsel in attendance. These are not rights which need to be afforded to a person who appears before a public body in a prosecutorial capacity. Such was the status of the superintendent of schools in this case. Other jurisdictions which have considered the problem have not accepted subterfuges which masked the true purpose of a retreat into executive session. *Bagby* v. *School Dist. No. 1*, 186 Colo. 428, 432-434 (1974) (subjects discussed at private "superintendent's conferences"). *Kamlet* v. *Board of Educ. of Plainedge Union Free Sch. Dist.*, 91 Misc. 2d 1105, 1106-1108 (N.Y. Sup. Ct. 1977) (subjects discussed at "planning sessions"). *News-Journal Co.* v. *McLaughlin*, 377 A.2d 358, 360-362 (Del. Ch. 1977) (leg-

islation discussed as not "public business"). *Hudson* v. *School Dist. of Kansas City,* 578 S.W.2d 301, 308-310 (Mo. Ct. App. 1979) (discussing "personnel matters" disguised discussion of administrative changes). Compare the bona fide executive sessions considered in *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70 (1978), and *Attorney Gen.* v. *School Comm. of Taunton,* 7 Mass. App. Ct. 226 (1979).

We turn now to the appropriate remedy for violation of the open meeting law in the instant case. Section 23B provides that, upon proof of failure by a governmental body to carry out the open meeting law, a court may issue a compliance order governing the future conduct of the governmental body. A separate subparagraph in § 23B authorizes a court to "invalidate any action taken at any meeting" at which the open meeting law has been violated. G. L. c. 39, § 23B, as amended through St. 1978, c. 372, § 12.[4] The plaintiffs' complaint sought this relief and was filed within twenty-one days of the public action, as required by the statute. It is quite apparent from the development of § 23B (invalidation of public action was not added to the arsenal of remedies until 1975) that the Legislature desired to sharpen the bite of the statute by providing sanctions which would affect past violations, as well as future ones.

So, for example, if, while in violation of the open meeting law, a board of appeals were to grant a special permit or a school committee were to adopt a policy of closing and consolidating schools, that action could be a nullity. See *Yaro* v. *Board of Appeals of Newburyport,* 10 Mass. App. Ct. 587, 592 (1980); *Toyah Independent School Dist.* v. *Pecos-Barstow Independent Sch. Dist.,* 466 S.W. 2d 377, 378-379 (Tex. Civ. App. 1971). See generally Comment, Invalidation As A Remedy For Open Meeting Law Violations, 55 Or.

---

[4] For the legislative history of the provision which authorizes a court to invalidate action taken in violation of the open meeting law, see *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket,* 5 Mass. App. Ct. 206, 213-214 (1977).

L. Rev. 519 (1976). Similarly, here, the discharge of Puglisi can be declared a nullity. We are of the opinion, however, that the discretion of a judge to fashion remedies for a violation of the open meeting law does not extend to reinstatement of an individual to the job from which a school committee has sought to discharge him. Our decisions have emphasized (in the context of the scope of the authority of arbitrators) the exclusive dominion conferred by statute (G. L. c. 71, §§ 37 and 38) upon school committees over the management of public schools. See *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 798-800 (1980), and *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 10 Mass. App. Ct. 459, 464-465 (1980), and cases cited therein. "Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system." *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362 (1940). The fault inherent in ordering reinstatement of a teacher or, as here, a school principal, is that reinstatement may be read as conferring entitlement to the position. There may be a subtle distinction between reinstatement and an order declaring a discharge from a faculty position invalid, but it is a distinction to which practical consequences attach.[5]

Indeed, we do not think the trial judge meant to imply that Puglisi, by reason of his defective discharge, had a status better than a nontenured teacher who had occupied a position less than ninety days. See note 3, *supra*. But, as phrased, the portion of the judgment which said, "The Whitman School Committee is to reinstate Horace G. Puglisi to the position of principal of the Gurney/Park Avenue Schools, forthwith, . . ." could be interpreted to confer such greater status.

---

[5] Reinstatement, for example, may by indirection punish teaching personnel and students as well as the school committee by burdening the system with an incompetent.

To fulfil the legislative purpose of exacting a penalty for violations of the open meeting law, the judge correctly required that Puglisi receive back pay from November 7, 1978, the date of the faulty discharge.[6] This is a remedy consistent with the approach discussed in *School Comm. of New Bedford* v. *New Bedford Educators Assn., supra.*

Although Puglisi's discharge on November 7, 1978, was properly declared invalid, the time since elapsed during the pendency of this litigation shall not be credited to Puglisi's tenure status. There is no suggestion that the school committee's appeal has not been in good faith. See *Belfer* v. *Building Commr. of Boston,* 363 Mass. 439, 445 (1973).

The judgment is hereby modified by striking the second paragraph, which orders reinstatement and substituting the following: "Puglisi shall receive compensation from November 7, 1978, to the date when the school committee acts in conformity with the open meeting law on the question whether Puglisi shall be dismissed or otherwise disciplined. Such compensation shall be at the rate Puglisi was being paid on November 7, 1978."

So much of the judgment (paragraphs 1 and 3) as invalidates Puglisi's discharge and orders the school committee to carry out the provisions of the open meeting law shall stand.

*So ordered.*

---

[6] So much of the judgment as dealt with back pay awarded it from November 7, 1978, to the date of the judgment. In view of his order of reinstatement (which we disapprove) the judge did not need to consider compensation after the date of judgment.