### ANN & HOPE LITIGATION

No. 11066

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

January 19, 1981

Charles A. Murray for the plaintiff.
Daniel Sacco, Francis M.Q. Lawrence, John A. Birknes, Jr. for the defendant.

## FINDINGS, RULINGS AND ORDER

### Introduction

The defendant "Irwin Chace, Trustee of Brookway Realty trust a/k/a Irwin Chace for Ann & Hope, Inc." ("the developer"), desires to develop a shopping mall on land owned by him situated in the Town of Dartmouth ("the locus"). The locus is situated near the Paskamansett River and because of its locale the development activity proposed to be accomplished there by the developer requires his "filing [of a] written notice of his intention . . . including such plans as may be necessary to describe such proposed activity and its effect on the environment . . ." pursuant to G.L. c. 131, §40 (the so-called "Wetlands Act."). In compliance with §40 the developer filed so-called "Notices of Intent" with the defendant Conservation Commission of the Town of Dartmouth ("the Conservation Commission") which, after required public notice and public hearings, issued so-called "Orders of Conditions" to the developer. Thereafter, the developer had performed some site preparation work at the locus including installing concrete footings during April, May, and June, 1980 and constructing a water retention basin beginning in late June, 1980. That work was halted after a temporary order restraining the continuance of that work was granted at the request of the plaintiffs by a Justice of this Court on July 21, 1980. Although the plaintiffs' application for preliminary injunctive relief was subsequently denied on August 12, 1980 after the temporary order expired, the developer has decided to forego proceeding with development at the locus until this litigation is resolved.

### The Parties and the Pleadings

The plaintiffs are 15 residents of the Town of Dartmouth and their complaint, which contains three counts, seeks relief by way of mandamus against the Conservation Commission and injunctive relief against the developer. The Building Commissioner of the Town of Dartmouth was joined in this litigation by a so-called "friendly" cross-claim set out in the developer's answer to the plaintiffs' complaint, which cross-claim seeks, among other things, declaratory relief validating the legality of the government approvals the developer has received to date which permitted him to develop a shopping mall at the locus.

### Findings of Fact and Rulings of Law

Because of the complexity of the plaintiffs' claims and because their complaint is so wide-ranging, findings of fact, which are of course based upon the evidence by way of testimony, exhibits and inferences therefrom, will be interspersed with the following rulings of law which track the claims set out in the plaintiffs' complaint.

The developer filed a Notice of Intent (Exhibit No. 2) with the Conservation Commission on September 4, 1979. After notice thereof was published September 13, 1979 in the **Dartmouth Chronicle**, the Conservation Commission held a public hearing thereon on September 18, 1979, which hearing was attended by approximately 20 persons. Thereafter, the Conservation Commission on October 9, 1979 issued an Order of Conditions (Exhibit No. 3) which was ultimately filed with the Bristol County Registry of Deeds, Southern District, on April 9, 1980. The developer filed a second Notice of Intent (Exhibit No. 4) with the Conservation Commission on December 19, 1979. Again, after notice thereof was published January 3, 1980 in the **Dartmouth Chronicle**, the Conservation Commission held a public hearing thereon on January 8, 1980. Thereafter, the Conservation Commission on January 22, 1980 issued a second Order of Conditions (Exhibit No. 5), which apparently was filed with the Bristol County Registry of Deeds at the same time the October 9, 1979 Order of Conditions was filed. The developer's second Notice of Intent was triggered by his acquisition of an additional parcel of land and by his desire to relocate a brook at the locus. The Conservation Commission's second Order of Conditions responded to those facts as well as accomplishing some modification of the conditions set out in the first Order of Conditions. The Conservation Commission issued a further minor modification of the first Order of Conditions by a letter dated March 14, 1980 (Exhibit No. 6).

In Count One of their complaint the plaintiffs seek relief by way of mandamus against the Conservation Commission, requesting that the Commission be ordered to void both Orders of Conditions, to the developer and that it be required to direct the developer both to cease work at the locus and to restore the locus to its original condition, and also other related injunctive and declaratory relief. It appears that the plaintiffs seek relief by way of mandamus because they failed to appeal to the Department of Environmental Quality Engineering within 10 days after the Orders of Conditions were issued by the Conservation Commission. Such an appeal is permitted by G.L. c. 131, § 40 to "any ten residents of the . . . town in which such land is located." The parties have stipulated (Exhibit No. 16) that "Each of the plaintiffs is a resident of the Town of Dartmouth" and also that, with one exception, none of the plaintiffs were aware of the September 18, 1979, and January 8, 1980, hearings before the Conservation Commission "within sufficient time" in order to appeal pursuant to § 40. Although the plaintiffs might possibly have a valid justification to their employment of the procedural remedy of mandamus overcoming the developer's objections thereto based upon laches and failure to exhaust administrative remedies, see **Brady v. Board of Appeals of Westport,** 348 Mass. 515 (1965), I decline to rule on the developer's objections because I reject the plaintiffs' claims on the merits as follows.

In Count One of their complaint the plaintiffs focus upon the Conservation Commission's issuance of the Orders of Conditions referred-to above. G.L. c. 131, § 40 requires that "Notice of the time and place of such hearing [on the developer's Notice of Intent] shall be given . . . not less than five days prior to such hearing by publication in a newspaper of general circulation in the . . . town where the activity is proposed. . . ." Section 40 also requires that "No such notice [of intent] shall be sent before all permits, variances and approvals required by local by-law with respect to the proposed activity, which are obtainable at the time of such notice, have been obtained. . . ." The plaintiffs claim that neither of those requirements were met, which they assert invalidates the Orders of Conditions issued by the Conservation Commission.

I rule in response that the plaintiffs' first claim in Count One is without merit. The

facts, as indicated above, are that with respect to the first Notice of Intent, the publication took place in a **Dartmouth Chronicle** dated September 13, 1979, advertising a public hearing which was held on September 18, 1979. The second Notice of Intent was published in a **Dartmouth Chronicle** dated January 3, 1980, which advertised a public hearing which occurred on January 8, 1980. Both September 16, 1979 and January 6, 1980 fell on a Sunday and the plaintiffs argue that controlling caselaw mandates a finding that where the time limited for the performance of any act is less than seven days, a Sunday is not to be included in the computation. I agree. See, **Sweeney v. Morey & Co.,** 279 Mass. 495, 503 (1932). The plaintiffs also point out that in calculating the required five-day notice, the day of the hearing must be excluded in the computation of time. I agree. See **Roman Catholic Archbishop v. Board of Appeal,** 268 Mass. 416, 417 (1929). However, an affidavit of the Editor of the **Dartmouth Chronicle** (Exhibit No. 16), which is indisputably a newspaper of general circulation, indicates that while the Chronicle "is a weekly newspaper with a publishing date for each Thursday of each week; [it]. . . is circulated and available on the newstands throughout the Town the preceding day on Wednesday." Thus, the Chronicle, although dated September 12, 1979 and January 3, 1980, was published the previous days. See, **Hollenberg v. Town of Billerica,** 360 Mass. 513, 514-515 (1971). Further, with respect to the exclusion of Sundays noted above, such an application of the "Blue Laws" is of questionable current validity.

Although it raises an issue of unusual complexity and presents a close question, the plaintiffs' second claim in Count One is also without merit. By way of factual background, Section 6D of the Dartmouth Zoning By-Laws (Exhibit No. 7) superimposes upon all zoning districts within the Town of Dartmouth a district called a "Flood-Prone Land District." Section 6D(2)(a) of the Zoning By-Laws prohibits filling, grading, paving, and excavation of land and other specified activity in the Flood Prone Land District unless a "Special Permit" is issued

therefor by the Zoning Board of Appeals. However, section 6D(2)(a) does permit "routine excavation, . . . filling, grading and paving incidental to the construction of a . . . structure for which a building permit has been issued." The "Flood-Prone Land District" is defined in Section 6D(1) to include "all lands in Dartmouth which have been identified as areas of special flood hazard . . . by the Federal Insurance Administration in the Flood Insurance Study for the Town of Dartmouth . . . with accompanying Flood Insurance Rate Maps and Flood Boundary and Floodway Maps, dated August 15, 1977" ("Study" and "Maps"). The Study and Maps are specifically adopted by reference as part of the By-Laws. Section 6D(4) of the By-Laws requires that the Building Commissioner of the Town of Dartmouth administer the provisions of the By-Laws regulating development in Flood-Prone Land Districts and at subsection (i) he must "Review proposed development within the Flood-Prone Land Districts to assure that all necessary permits have been received from those governmental agencies from which approval is required by Federal or State law." Section 6D (4)(a)(III) further mandates that the Building Commissioner "Obtain, review, and seasonably utilize any base flood elevation data available from a Federal, State, or other source, until such other data has been provided by the Flood Insurance Administration, as criteria for requiring that all new construction . . . meet the requirements set forth in this By-Law." The developer applied for a building permit to commence construction on November 16, 1979 and on December 18, 1979 the Building Commissioner issued a building permit to the developer (Exhibit No. 9). The Building Commissioner determined that the development proposed for the locus, except for a water retention basin which was "incidental" to the shopping mall structure and thus permitted upon the issuance of a building permit, would not occur within the Flood-Prone Land District and thus a Special Permit from the Zoning Board of Appeals was not required by Section 6D(2)(a) of the By-Laws. The Building Commissioner made that determination on the basis that

the proposed development at the locus would occur above the 50-foot elevation which is the most reasonable manner of determining what is and what is not an area of special flood hazard. I agree with that determination.

During the trial of this action the plaintiffs' expert calculated that the development at the locus would occur in an area of special flood hazard by calibrating, i.e., by using the technique of scaling from reference points, the area of special flood hazard set out on the map designated 09 of the Maps (Exhibit No. 9) with a site plan prepared by the developer (Exhibit No. 11). Also at the trial the developer's experts and the Building Commissioner testified that they came up with an inconsistent result by employing different reference points with the same site plan. According to the testimony of another of the developer's experts, an official of the federal government, the Assistant Director for Engineering Services of the Federal Insurance Emergency Management Agency's Boston office, the Maps set out only approximations of what are areas of special flood hazard, that scaling inevitably leads to inaccuracies and the most reasonable manner of making a determination of what is what is not an area of special flood hazard is to employ the 100-year flood level zone referred to at Section 4.1 (page 9) of the Study (Exhibit No. 12). Section 4.1 of the Study provides in relevant part that "In order to provide a national standard without regional discrimination, the 100-year flood has been adopted by the Federal Insurance Administration as the base flood for purposes of flood plain management measures" and that "However, limits of flooding on the ground cannot be precisely determined from [the Maps]; and it is suggested that the profiles and standard survey methods be used by interested parties to determine depths of flooding at particular locations in question." That same federal government official determined that "the 100-year flood level will be 50 feet at every point in the flood plain adjacent to the [locus]." I conclude and rule on the basis of the language contained in Exhibits 7 and 12, on the basis that the Maps set out merely approximations, and on the basis that scaling from the maps to site plans from varying reference points leads to varying results, that the most reasonable manner consistent with law in determining whether or not the locus either is or is not situated in an area of special flood hazard is to employ a field survey in order to ascertain the location of the 50-foot elevation and to determine that what is above the 50-foot elevation are not areas of special flood hazard. According to that method the development planned for the locus, with the possible exception of the retention basin, is not located in an area of special flood hazard and the Building Commissioner was correct and acting within the scope of his authority in determining a Special Permit from the Board of Appeals was not required.

Turning now to Count Two of the plaintiffs' complaint, again they seek relief by way of mandamus against the Conservation Commission. The plaintiffs in that Count claim that the work performed by the developer at the locus was in violation of both the Wetlands Act and the Orders of Conditions issued by the Conservation Commission. First, with respect to purported violations of the Wetlands Act, I note that § 40 provides in relevant part that "No work proposed in any [Notice of Intent] shall be undertaken until the final order, determination or notification with respect to such work has been recorded in the registry of deeds . . ." As recounted above, a modification of the October 9, 1979 Order of Conditions was approved by the Conservation Commission by a letter dated March 14, 1980 but it was not recorded in the Registry of Deeds until October, 1980. (See Exhibit No. 14 which sets out a stipulation to that effect.) As a matter of fact, as found above, the developer had site preparation work performed at the locus from April through July, 1980. In their Memorandum of Law at page 19, the plaintiffs admit that "The [March 14, 1980] modification allowed for a change in the order of construction only" and did not compromise in any way the intent of the Orders of Conditions. As such, in my opinion, that modification was and is not a "final order, determination or notification" as prescribed by § 40. Moreover, as stipulated-to, that

modification was in fact subsequently recorded in the Registry of Deeds and any harm from such a "late" recording appears to be even less than de minimis on the facts here especially in view of the strict standard of review applicable to claims for relief by way of mandamus which is designed primarily to prevent a failure of justice. See, The Coach and Six Restaurant, Inc. vs. Public Works Commission, 363 Mass. 643, 644 (1971).

With respect to the plaintiffs' claim that the developer has violated Condition No. 25 of the October 9, 1979 Order of Conditions and Condition No. 22 of the January 22, 1980 Order of Conditions, factually each of those conditions provide that "Before starting any actual construction, all obtainable permits, variances and approvals required by the local, State and Federal agencies will be obtained and the [Conservation] Commission will be informed of the specific authorization so applied or granted." The plaintiffs claim that three such permits were not obtained prior to the start of construction. First, the plaintiffs correctly point out that a statement from the Secretary of Environmental Affairs indicating whether or not in his judgment the Environmental Impact Report properly complied with G.L. c. 30, § § 62-62H, was not obtained until June 5, 1980. The developer's argument that the provisions of G.L. c. 30, § § 62-62H, the so-called Massachusetts Environmental Policy Act, restrict only actions only of state agencies is substantially undercut by the facts that the developer was required to submit an environmental report, that he did submit one and that he had it approved by the Secretary. G.L. c. 30, § 62A sets out the conditions under which private parties are required to file environmental impact reports. Where a private party is not applying for state funding, the requirement that such a report be filed is, in my opinion, purely perfunctory. The Secretary's statement was subsequently issued on June 5, 1980, and any violation resulting from the failure to obtain his statement prior to that date is again less than de minimis. Also again, this is especially true in light of the mandamus standard of review referred to above.

The second permit which the plaintiffs claim that the developer did not obtain before starting any actual construction is an approval by the Town of Darmouth of a proposed alteration of Faunce Corner Road. As a matter of practicalities, while the development requires an alteration of Faunce Corner Road, legally pursuant to G.L. c. 82, the only persons who can apply to a town meeting for acceptance of any road alteration are the "selectmen or road commissioners." Moreover, traffic improvements or alterations are beyond the purview of the Wetlands Act. See, for example, Lovequist v. Dennis, 1979 Mass. Adv. Sh. 2210, 2217.

The third and final permit which the plaintiffs claim that the developer did not obtain as required by the Orders of Conditios is the special permit from the Zoning Board of Appeals for work to be performed in a Flood-Prone Land District and rulings set out above in response to the plaintiffs' claims in Count One are equally applicable here.

In their third Count, the plaintiffs claim that there has been "damage to the environment" as that term is described in G.L. c. 214, § 7A, and seek the relief permitted by § 7A against the developer. The plaintiffs' theory of relief here prescinds from a claim that the work performed to construct a water retention basin occurred in flood-prone land district, that it damaged the environment, that it is in violation of G.L. c. 131, § 40, and that it is in violation of those provisions of the Town of Dartmouth Zoning By-Laws the major purposes of which are to minimize damage to environment. Without ruling upon the sufficiency of the jurisdictional prerequisite of the "written notice of such violation or imminent violation" (Exhibit No. 1), the plaintiffs' claims under the Count of their complaint are, in my opinion, totally without merit. Under G.L. c. 214, § 7A, the plaintiffs must allege and show that damage to the environment is either occurring or is about to occur. See, Nantucket Land Council, Inc. vs. Planning Board of Nantucket, 5 Mass. App. Ct. 206 at 215 (1977). The plaintiffs did not present any credible evidence of past, current or pro-

spective damage to the environment by the developer at the locus and waived argument on that claim in their Memorandum of Law.

As noted above, the developer also seeks relief in this action and has decided to forego proceeding with development at the locus until this litigation is resolved. Yet, the developer justifiably fears that if he does not continue work at the locus his building permit, zoning variances and the Orders of Conditions will expire. Simply stated, the developer suggests that he is between a rock and a hard place and I agree. In sum, the developer seeks an order declaring that the building permit, the zoning variances permitting him to construct the shopping mall, and Orders of Conditions were all validly issued as well as an order tolling the time limit within which rights may be exercised by him under the permit, variances and Orders of Conditions pending any litigation. In my opinion, it is appropriate to declare that any statutes of limitations concerning the developer's construction rights to be tolled for the reason that this case is virtually on all fours with **Belfer v. Building Commissioner of Boston,** 363 Mass. 439 (1973) in which the Supreme Judicial Court ruled that a variance should be tolled pending an appeal by the persons claiming to be aggrieved by the variance even though there were no legal impediments to the use of the variance during the appeal period. However, with respect to the other declaratory relief that the developer seeks, it would be inappropriate to grant such relief for the reason that, in my opinion, the developer is adequately protected by res judicata and stare decisis. Res judicata would prevent the plaintiffs from relitigating these issues or raising any new objection to the permit, variance and Orders of Conditions in a new proceeding as they were issues which could have been raised in this action. A different plaintiff or plaintiffs would be barred by **stare decisis** from raising issues already raised in this case. If new plaintiffs have separate and distinct objections to the variance, permit or Orders of Conditions and if they could surmount the considerable procedural hurdles to commencing another action, it would be unfair and denial of their due process rights to deny them their day in court on such issues.

## ORDER

I request that counsel for the developer prepare an Order for Judgment consistent with the above rulings.

**Paul G. Garrity**
**Justice of the Superior Court**