DAVID BARTELL & others[1] vs. WELLESLEY HOUSING
AUTHORITY.

No. 89-P-14.

Norfolk. January 16, 1990. - February 28, 1990.

Present: DREBEN, SMITH, & FINE, JJ.

*Open Meeting Law. Housing Authority. Public Employment*, Termination.
*Municipal Corporations*, Open meetings, Collective bargaining. *Public
Board.*

A housing authority's discharge of an employee in executive session, after
   the employee had requested as of right under G. L. c. 39, § 23B, fourth
   par., cl. 2, that his dismissal be considered at an open meeting, was a
   violation of the open meeting law. [308]
Discussion of the history of statutory amendments to the open meeting law
   with respect to enforcement and remedies. [308-310]
A Superior Court judge properly ordered the payment of back pay as the
   remedy for a housing authority's failure, for a period of time, to have
   complied with the open meeting law in discharging one of its employees
   [310-311]; the entitlement to back pay commenced on the date of the
   wrongful conduct of the authority and continued until an open hearing
   on the matter was held [311-312].

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 2, 1986.

The case was heard by *David H. Kopelman*, J., sitting
under statutory authority.

*Keith B. Muntyan* for the defendant.
*Robert M. Schwartz* for the plaintiffs.

FINE, J. The executive director of the Wellesley Housing
Authority (the housing authority) suspended David Bartell
without pay in June of 1985 and then terminated his employ-
ment on July 30, 1985. With the assistance of his union, Bar-
tell filed a grievance and sought a hearing before the housing

---

[1]Leo B. Doherty, Ramona Cook, and George M. Posner.

authority. He requested that the matter be heard in open, not executive, session. The meeting was held on August 28, 1985. The discussion took place in executive session.[2] The housing authority took the matter under advisement and informed Bartell that they would respond to him in writing with their decision. During the executive session following the next regularly scheduled public meeting on September 11, 1985, the housing authority voted to uphold the dismissal.

Bartell and the union first complained to the district attorney of Norfolk County that the open meeting law (G. L. c. 39, § 23B) had been violated.[3] An assistant district attorney informed the parties by letter of his determination that the open meeting law had been violated and that the housing authority "should now afford a new open hearing." On December 20, 1985, the present complaint was filed by Bartell and three other voters seeking an open dismissal hearing and, pending that, Bartell's reinstatement with back pay.[4] An open meeting of the housing authority to consider the matter of Bartell's dismissal was held on January 16, 1986, and, in another open session, on January 22, 1986, the members voted to discharge Bartell, thereby denying the grievance.

Essentially on these facts, a Superior Court judge allowed the plaintiffs' motion for summary judgment. He determined that the September 11, 1985, vote was invalid[5] and ordered the housing authority to pay Bartell's salary from the date in

---

[2] It is reasonably inferable from the material before the motion judge that Bartell registered his objection to the housing authority's decision to consider the matter in executive session at the August 28, 1985, meeting.

[3] By the terms of the statute, the remedies under G. L. c. 39, § 23B, are not exclusive and are in addition to all other remedies.

[4] The judge ruled that the plaintiffs' complaint was timely because the twenty-one day period in which to file for invalidation did not begin to run until the board, in the answer to the complaint on January 22, 1986, first made its findings public. This ruling has not been disputed on appeal.

[5] The undisputed affidavit of the housing authority's executive director establishes that notice of the September 11, 1985, meeting was duly posted. In this respect only we find the judge's findings erroneous. However, there is no indication that Bartell was notified, as required by the statute, of the board's intent to vote on his dismissal at this meeting. See G. L. c. 39, § 23B, fourth par., cl. (2).

June or July of 1985 on which he was last paid through January 22, 1986. On appeal, the housing authority contends, first, that it did not violate the open meeting law, and, second, that, if there was a violation, it was error for the judge to impose the back pay remedy. With slight modification, we affirm.

1. General Laws c. 39, § 23B, requires that, with certain specified exceptions, all meetings of governmental bodies be open to the public. One of the exceptions is "to conduct collective bargaining sessions." G. L. c. 39, § 23B, fourth par., cl. (3). Ordinarily, discussion of an employee's grievance falls within the statute's exception for "collective bargaining sessions." See *Ghiglione v. School Comm. of Southbridge*, 376 Mass. 70, 73 (1978). The statute also provides, however, that "[a] governmental body shall hold an open meeting [to discuss the dismissal of an employee] if the individual involved requests that the meeting be open." G. L. c. 39, § 23B, fourth par., cl. 2, as amended by St. 1978, c. 372, § 10. We agree with the motion judge that the express statutory right of a public employee to have his dismissal considered at a public meeting takes precedence over the more general exception which permits consideration of collective bargaining matters in closed session. For that and the other reasons given by the judge in his careful and comprehensive memorandum of decision,[6] we conclude that the housing authority's discharge of Bartell in executive session was a violation of the open meeting law.

2. The issue of the proper remedy for the statutory violation merits more extensive discussion. The housing authority contends that back pay should not have been ordered in this case because it acted without any improper intent, and the order results in a windfall to Bartell.

The goal of the open meeting law is to advance democracy by providing broad access to governmental decision-making

---

[6]As to the issues raised by the housing authority on appeal, the judge rejected as semantic the claim that the executive director, and not the housing authority, discharged Bartell, and the judge considered the absence of an existing collective bargaining agreement as immaterial.

and eliminating "the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. at 72; *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 558 (1988). The history of statutory amendments to the open meeting law relating to enforcement is one of increasingly effective remedies. In its original form, the statute did not articulate any remedy. See St. 1958, c. 626, § 4. Two years later, the Legislature authorized a specified number of registered voters alleging an open meeting violation to petition to the Supreme Judicial Court or the Superior Court for an order compelling compliance. St. 1960, c. 437, § 5.[7] The 1960 amendment provided, however, that any "action otherwise duly taken at any meeting shall not be invalidated by the failure of any officer to carry out the said responsibilities for public notice of meetings." *Ibid.* Apparently mindful of prospective difficulties in implementation, the Legislature deferred to important "legislative, executive and quasi judicial" functions performed by local boards and declined to jeopardize otherwise valid actions by authorizing judicial invalidation. See *Elmer* v. *Board of Zoning Adjustment of Boston*, 343 Mass. 24, 27 (1961). Next, "to sharpen the bite of the statute" (*Puglisi* v. *School Comm. of Whitman*, 11 Mass. App. Ct. 142, 145 [1981]), the Legislature authorized courts to order actions taken in violation of the open meeting law to be invalidated. St. 1974, c. 83.[8] In *Puglisi*, "[t]o fulfil the legislative purpose of exacting a penalty for violations of the open meeting law," 11 Mass. App. Ct. at 147, this court affirmed a decision both invalidating an employee's discharge, which had been voted

[7]Statute 1964, c. 323, § 1, reduced from ten to three the number of registered voters necessary to petition for compliance.

[8]A petition had to be filed within fourteen days of the action challenged. St. 1974, c. 83. The statute underwent comprehensive amendment the following year, including a more liberal calculation of the time limitations on the right to seek invalidation. St. 1975, c. 303, § 3. See *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket*, 5 Mass. App. Ct. 206, 213-214 (1977). In 1978, the fourteen-day limit was extended to twenty-one days. St. 1978, c. 372, § 12.

at a school committee meeting held in violation of the open meeting law, and ordering back pay. We found the authority for the back pay order to be implicit in the statute, as it then read. After the *Puglisi* decision, the Legislature, on petition of the Massachusetts Teachers' Association, again amended the open meeting law to include, expressly, the remedy of "reinstatement without loss of compensation, seniority, tenure or other benefits for any·employee discharged at a meeting or hearing held in violation of the provisions of this section." St. 1983, c. 649. See Sen. Doc. No. 1473 (1983). The remedy provisions of the statute have not been amended further to date.

The housing authority contends that, unlike their actions, the actions of the public agency in the *Puglisi* case involved bad faith. It does not follow, however, that that distinction requires a different result with respect to the right to back pay. Whether to impose a particular remedy in any case under the statute is a matter for the exercise of sound judicial discretion. See *Robinson* v. *Planning Bd. of Hingham*, 6 Mass. App. Ct. 835, 836 (1978); *Tebo* v. *Board of Appeals of Shrewsbury*, 22 Mass. App. Ct. 618, 623 (1986), *S.C.*, 400 Mass. 464 (1987); *McDermott* v. *Watertown Housing Authy.*, 25 Mass. App. Ct. 995 (1988). Although in this case the judge could, in a proper exercise of his discretion, have reached a different result on the issue of back pay, we hardly think he abused his discretion.

The statutory amendment following *Puglisi* provides express support for a remedial order of reinstatement with back pay. Such an award, because of its financial consequences, furthers the statutory purpose by encouraging public bodies to comply with the law. To the extent that the goal of the remedial provisions is to encourage compliance, good faith is not dispositive. How a trial judge exercises his discretion may be affected by whether a public agency acted in good faith; but there is nothing in either the *Puglisi* decision or the statute itself which indicates that the imposition of a back pay remedy must turn on whether the public agency acted in bad faith. A back pay order may not, as the housing authority

contends, be viewed as entirely punitive in nature. As the vote to discharge Bartell was properly invalidated, his employment status was at least constructively restored until the valid hearing. See *Puglisi* v. *School Comm. of Whitman*, 11 Mass. App. Ct. at 147.

Because the housing authority voted eventually at a validly conducted meeting to deny the grievance and to terminate Bartell's employment, the housing authority further challenges the back pay award as resulting in a windfall. In some sense, the housing authority is correct; it is probable, although not certain, that Bartell would have met the same fate as he did at the January 22, 1986, meeting had a properly conducted meeting to consider his dismissal begun on August 28, 1985. The statute, however, authorizes such a remedy without regard to whether the ultimate vote is for reinstatement or discharge. So also does the *Puglisi* case. This court upheld the back pay award although, in recognition of a school committee's exclusive dominion over public school management, the matter of reinstatement was left to be decided by the school committee. *Puglisi* v. *School Comm. of Whitman*, 11 Mass. App. Ct. at 146. Moreover, the statutory goal of encouraging open proceedings in compliance with the law would not be advanced by having a decision on back pay turn exclusively on the outcome of the final valid vote on dismissal of an employee. If back pay awards were precluded in such situations, public bodies might be encouraged to vote in secret, wait to see if enforcement of the law is sought, and then, only if necessary, vote in public. Compare *Kramer* v. *Board of Adjustment, Sea Girt*, 80 N.J. Super. 454, 464 (1963).

The award should not have included any damages for the period prior to August 28, 1985, the date of the first wrongfully-held closed hearing, or after January 16, 1986, the date of the properly-held open meeting. Bartell was entitled only to back pay commencing on the date of the wrongful conduct, see *Huntoon* v. *Quincy*, 349 Mass. 9, 13 (1965), and until the situation was rectified by the holding of an open hearing. Accordingly, we order the judgment amended to

provide for back pay, effective August 28, 1985, until January 16, 1986. In other respects, the judgment is affirmed.

*So ordered.*