CLYDE G. LOWER *vs.* NORTH MIDDLESEX REGIONAL
SCHOOL COMMITTEE.

Middlesex.    September 11, 1979. — October 30, 1979.

Present: GRANT, BROWN, & DREBEN, JJ.

*School and School Committee,* Tenure of personnel.

Where a tenured music teacher, who had also served as director of the
    two school bands for several years, refused to sign the band contract
    in retaliation for the school committee's decision to deny him a
    raise and his refusal was not based on any genuine grievance or
    desire not to direct the bands, but in order to force the school
    committee to grant the raise, the school committee was warranted
    in dismissing him under the provisions of G. L. c. 71, § 42. [539-541]

CIVIL ACTION commenced in the Superior Court on
November 8, 1976.

The case was heard by *Donelan,* J., a District Court
judge sitting under statutory authority.

*Jeffrey M. Freedman* for the plaintiff.

*Leonard M. Frisoli, Jr.,* for the defendant.

DREBEN, J. The sole issue presented by this appeal is
whether, on the evidence presented to the trial judge, the
action of the school committee (committee) was "justifia-
ble" when it discharged the plaintiff, a tenured music
teacher. The following facts were found by the judge after
hearing the cause de novo pursuant to G. L. c. 71, § 43A
(as amended by St. 1977, c. 671),[1] or have been found by
us from undisputed testimony at trial. See *Conte* v. *School
Comm. of Methuen,* 4 Mass. App. Ct. 600, 601 (1976).

---

[1] General Laws c. 71, § 43A, as so amended, reads in part:   "The
court . . . shall hear the cause de novo, review such action, and deter-
mine whether or not upon all the evidence such action was justifiable.
If the court finds such action was justifiable, the action of the school
committee shall be affirmed."

Lower was first hired as director of music for grades seven through twelve of the North Middlesex Regional School District in 1970. He became tenured in 1973 and taught until October 12, 1976, at which time, after a hearing, he was dismissed by the committee. From 1970 through 1975 Lower was both a music teacher and the director of the two school bands. The incidents which led to his discharge started in the fall of 1975, when he, in violation of administrative protocol, bypassed the school administration and communicated directly with the school committee. Despite receiving written criticism of his behavior from the high school principal, Lower continued to bypass his school administration and, in February, 1976, after sending the committee a memorandum ridiculing the high school principal and faculty curriculum council, was again censured by the school administration. In March, 1976, he was notified that the committee had decided not to grant him a salary increase for the 1976-1977 school year because the "quality" of his "total services to the school district did not warrant granting this increment."

The trial judge found that "[b]eginning in March of 1976, and continuing to the time of his dismissal, the plaintiff waged a relentless campaign to induce the [s]chool [c]ommittee to reconsider its decision to deny him a step salary increment." Although in 1976 he had two contracts, one as a music teacher and the other as the director of the bands, and had entered into two such contracts each year since 1970, in March, 1976, he threatened to engage in a work stoppage as band director. He wrote to the principal and posted a letter on the bulletin board stating that he would not participate in activities beyond the regular school day, although he acknowledged in the posted letter that such actions would adversely affect the music program. He was later persuaded by the principal to continue as band director, but the judge found that he did so only temporarily and soon resumed his unprofessional conduct. Although Lower re-

ceived the contract for his 1976 services as band director in July, 1976, he neither signed nor returned that contract and ignored two letters written to him by the superintendent in August. The second letter requested Lower to make an appointment to meet with the superintendent, but Lower failed to respond. On September 2, he was notified that a hearing would be held by the committee on October 12 to vote on whether to dismiss him on the grounds of "insubordination, or other good cause." On September 6, Lower met with the superintendent, school officials, and a representative of the teachers' association and at the meeting claimed that under the collective bargaining agreement between the committee and the North Middlesex Regional School District Teachers' Association he was not required to sign the band contract because directing the band was a separate activity which, under the agreement, could not be assigned to him without his consent. He also threatened those present with a disruption of the music department, stating that the students would boycott the bands if he were not the director. The superintendent rejected Lower's offer to work on a temporary basis without a contract and Lower declined, despite requests from the school administration, to submit his grievances to the settlement mechanisms of the collective bargaining agreement.

The superintendent, at Lower's request, pursuant to G. L. c. 71, § 42, particularized the charges against him in a letter dated September 8, 1976.[2] The second charge al-

---

[2] The charges contained in the letter were: "(1) Refusal to perform your contractual duties as band director, and band teacher. (2) Attempting to extract from the School Committee, against its will, your step increment by refusing to lead the band in activities outside school hours. (3) Your failure to observe protocol, and the attitude and approach used by you in performing your duties that do not have the sanction of the administration; and without obtaining said sanction resulting in a strained relationship between you and the administration. (4) The belief of the administration that your conduct is contraindicative to the building and maintaining of an efficient school system."

leged that Lower attempted to extract his step increment from the committee against its will by refusing to direct the bands after school hours. The trial judge found and ruled that this charge was supported by the evidence and constituted "insubordination" and "good cause" within the meaning of G. L. c. 71, § 42.[3] We agree.

Under G. L. c. 71 the school committee's power over the employment and discharge of teachers is paramount[4] and is subject only to such express restrictions as the Legislature has imposed on the general grant of power to the committee. *Mackenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 615 (1961), S.C., 343 Mass. 778 (1962). This legislative policy is of long standing. *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362-363 (1940). As pointed out by the court in *Davis*, "The success of a school system depends largely on the character and ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a school system. The statutory power of a school committee has always been freely construed." *Id.* at 362.

General Laws c. 71, § 42 (as amended through St. 1972, c. 464), provides for the dismissal of a teacher "employed at discretion" (i.e. a tenured teacher) only for "inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause." The term "good cause" has been held to include "any ground which is put forward by the committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system." *Rinaldo* v. *School Comm. of Revere*, 294 Mass.

---

[3] The judge also held that the first charge was not sustained and that the third and fourth charges were too vague to sustain a charge of insubordination or other good cause.

[4] This case does not involve violation of procedures established by a collective bargaining agreement. Compare *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788 (1977).

167, 169 (1936). *Davis, supra* at 362. *Faxon* v. *School Comm. of Boston,* 331 Mass. 531, 534 (1954). *Nutter* v. *School Comm. of Lowell,* 5 Mass. App. Ct. 77, 81 (1977).

A reviewing court, hearing the cause de novo under G. L. c. 71, § 43A, has to determine whether the charge is substantiated. If there is ground for dismissal, the decision is for the school committee, and it is not the court's function to consider whether the committee's action is appropriate or wise. *Mackenzie* v. *School Comm. of Ipswich, supra* at 614-615, and 618.

Here, the plaintiff's refusal to sign the extra services contract was found by the judge to be an act of retaliation for the decision of the school committee denying him a raise, and was not based on any genuine grievance or desire not to direct the bands. Lower admitted that but for the refusal on the part of the committee to reconsider its denial, he would have signed the contract. He also admitted that, ideally, the same person should hold both the position of music teacher and director of the bands, and the judge found that there was no practical way in which the dual functions could be divided without a detrimental effect on the music education of the students. Lower's failure to sign the contract was part of "a pattern of conduct likely to interfere with the orderly administration of the school system" in order to obtain his raise. See *Mackenzie, supra* at 617-618. His actions of the previous March, his threat of a student boycott of the bands if he were not appointed director, and his refusal to sign the contract were part and parcel of that design. In such circumstances the plaintiff could not hide behind the contractual provisions of the collective bargaining agreement relating to extra curricular activities. His reliance on them was a pretext, and his motive was not, as he contends, irrelevant. See *McIntosh* v. *Abbot,* 231 Mass. 180, 182-183 (1918); *Oehme* v. *Whittemore-Wright Co.,* 279 Mass. 558, 563-564 (1932). Lower's actions of March, 1976, could be taken into account by the committee even if, as is not the case, those actions concerned the unsustained

specifications. *Mackenzie, supra* at 619-620. See *Mayor of Medford* v. *First Dist. Court of E. Middlesex*, 249 Mass. 465, 473 (1924).

We conclude, as did the judge, that there was ample justification for the committee's decision.

*Judgment affirmed.*