DONALD KURLANDER vs. SCHOOL COMMITTEE OF
WILLIAMSTOWN
(and a companion case[1]).

Berkshire.   February 18, 1983. — July 13, 1983.

Present: GREANEY, KASS, & WARNER, JJ.

*Administrative Law,* Judicial review.  *Practice, Civil,* Dismissed school
teacher's appeal.  *School and School Committee,* Dismissal of ten-
ured personnel.

Discussion of de novo judicial review under G. L. c. 71, § 43A, of a
school committee's decision to discharge a tenured teacher. [354-357]
In the circumstances, a tenured teacher discharged by a school committee
for conduct unbecoming a teacher was not denied any constitutional
or statutory rights by the school committee's failure to specify which of
fourteen charges against the teacher the committee had found sub-
stantiated and had relied on in dismissing the teacher.  [357-359]
WARNER, J., dissenting.
The open meeting law, G. L. c. 39, § 23B, did not preclude a school com-
mittee in a proceeding to dismiss a tenured teacher from closing its
deliberations to the public, even though the committee had held public
hearings for the taking of evidence in the matter.  [359-361]

TWO CIVIL ACTIONS commenced in the Superior Court De-
partment on September 13 and 28, 1978, respectively.

The cases were heard by *Alberti, J.*

*John J. Egan (Edward J. McDonough, Jr.,* with him) for
the plaintiffs.

*John D. Lanoue* for the defendant.

GREANEY, J.   This case consolidates Donald Kurlander's
appeal, initiated in the Superior Court, from the vote of the
Williamstown school committee to dismiss him from his ten-
ured teaching position with an action brought by eleven

---

[1] Mary L. Dempsey & others *vs.* School Committee of Williamstown.

registered voters of Williamstown, which challenges certain procedures followed by the committee in considering the dismissal as a violation of the open meeting law, G. L. c. 39, §§ 23A-24. A judge of the Superior Court heard the cases together. The trial of the dismissal case was de novo as required by G. L. c. 71, § 43A.[2]

Kurlander was a tenured elementary art teacher in the Williamstown public school system. He was advised by letter of March 28, 1978, that the superintendent of schools had proposed to the Williamstown school committee that he be dismissed for inefficiency, unbecoming conduct, insubordination and "other good cause."[3] The letter also advised him of certain rights which accrued under G. L. c. 71, § 42, including the right to written charges of the causes for which dismissal is proposed and to a hearing at which he could be represented by counsel. A list of fourteen charges was subsequently furnished, which included references to specific incidents, dates and school personnel who witnessed or were involved in the events. The charges are set out in the Appendix following the dissenting opinion. The hearing before the committee commenced on August 7, 1978, and continued on various dates in August before concluding on September 1, 1978. Kurlander was represented by counsel who, the transcript discloses, approached his task vigorously, both in cross-examining witnesses and arguing points of law before the committee. Kurlander requested an open hearing, and the committee voted to hold one. All sessions of the hearing up to September 1 were held in public. On that day, at the conclusion of the evidence, counsel for the committee instructed the committee members on the law,

---

[2] General Laws c. 71, § 43A, as amended by St. 1977, c. 671, reads in part: "The court . . . shall hear the cause de novo, review such action, and determine whether or not upon all the evidence such action was justifiable. If the court finds such action was justifiable, the action of the school committee shall be affirmed . . . ."

[3] These generic causes reflect the command of G. L. c. 71, § 42, as appearing in St. 1972, c. 464, § 2, that a tenured teacher "shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . ., insubordination or other good cause."

and suggested that they deliberate in private "where each member . . . may frankly discuss the evidence," and thereafter return to open session to vote on the question of dismissal. Kurlander objected, and the committee chairwoman announced that the deliberations would be private, as counsel for the committee had suggested. There was no vote on the question of a private session. Kurlander's counsel subsequently objected to some of the instructions given by counsel for the committee, incorporating his previous objection to the private session. He did not, however, object to the lack of a vote to deliberate in private. Several hours later, the committee reconvened in public session and voted unanimously that the "charge[s]" of conduct unbecoming a teacher, insubordination and inefficiency had been substantiated. The committee then voted unanimously to dismiss Kurlander. Kurlander did not request the school committee to specify which of the fourteen charges formed the basis of its action.

By agreement of the parties, both cases were tried in the Superior Court upon the transcript of the proceedings before the committee, and certain exhibits and stipulations, including a stipulation which the parties and the judge treated as preserving the issues argued here. With an inconsequential exception,[4] the evidence in the Superior Court was therefore precisely the same as that presented to the committee. The committee had heard thirty-five witnesses over six days of hearings. There was extensive testimony by school administrative personnel concerning Kurlander's repeated failure to produce adequate lesson and curriculum plans. The testimony recounted the administration's continuing efforts to procure compliance in this area and to have Kurlander keep his classroom neat and clean, another area of continued friction. Other witnesses spoke of Kurlander's failure to perform certain assigned "bus duty." There was also testimony, much of it com-

---

[4] Limited, and essentially cumulative, testimony before the court by the superintendent of schools.

plimentary to Kurlander, concerning his effectiveness as a teacher.

The testimony of gravest import, however, concerned incidents which occurred on March 20 and 21, 1978. These incidents were the basis for the first four charges brought by the committee. Ronald Gagnon, an administrative assistant, testified that on March 20 he entered Kurlander's classroom to videotape the class in connection with a planned submission to an arts program in Boston. According to Gagnon, Kurlander approached him immediately and, in a "harsh and loud voice," made comments which could reasonably be interpreted as questioning Gagnon's competence. When Gagnon attempted to leave, Kurlander insisted he stay and "again started screaming." Gagnon reported the incident, which took place in front of Kurlander's students, to Helen Renzi, the principal. Renzi also had a confrontation with Kurlander on that day. She testified that on a routine walk through the school she stopped at Kurlander's room. As she entered, he commenced to "yell" at her, saying, "I knew if I yelled loud enough, you would come in." (Although the timing of the events is unclear, Renzi may have entered the classroom shortly after the Gagnon incident.) Renzi testified that, in front of the class, Kurlander referred to requests he had made which he asserted had not been filled and "berated" her. Renzi called Kurlander to her office later that day and, after some discussion with him and Gagnon, suspended Kurlander for three days. Kurlander left, "shouting and arguing" about who would arrange for a good substitute teacher in his absence.

On the following day, Kurlander was called to a meeting with Renzi and John Madden, the superintendent of schools. Kurlander was handed a letter which confirmed the three-day suspension and reserved Madden's right to take further disciplinary action. Kurlander read the letter and in turn handed it to his wife, sitting in an outer office, telling her to "check it for grammar." The meeting was stormy and peppered with more loud outbursts by Kur-

lander. At one point, he referred to Renzi's early departure from the meeting as creating the opportunity to engage in a fistfight if Madden removed his glasses. Kurlander testified that he did not recall having made some of the remarks testified to by Renzi and Madden and characterized his loudness as "theatrics," which were not intended to be unpleasant.

The judge made findings of fact which alluded to the continuing conflicts over neatness and lesson plans. He also found that, while Kurlander had a good grasp of his subject, he received "lesser marks on his ability to transmit education to the public school students." The judge further found that the incidents in March were the immediate cause of Kurlander's suspension and the reservation by the superintendent of the right to take further disciplinary action. He found Kurlander's actions to have involved "totally inappropriate language spoken to Gagnon in the presence of pupils . . . and thereafter . . . totally inappropriate language to both Mrs. Renzi and Mr. Madden at subsequent discussions. All of this took place in the presence of pupils and other supervisory personnel."

Based on his findings of fact, which accurately synopsized testimony before the committee, the judge concluded that Kurlander had not been denied any statutory right or due process by the committee's actions and that the committee was justified in dismissing Kurlander. The judge also ruled that no violation of the open meeting law had occurred. Timely appeals were taken from the ensuing judgment which affirmed the committee's action.

1. Kurlander first contends that the school committee is required under § 43A, or on the ground of procedural due process, to state which charges it has found substantiated because without such a statement (a) the Superior Court has an inadequate basis on which to conduct the de novo hearing required by § 43A; and (b) the teacher cannot adequately prepare and defend the case against him at the Superior Court hearing. Implicit in these arguments is the notion that any charges which the school committee determines to be unproven cannot be passed upon by the Superior

Court. Were it not so, the argument suggests, the Superior Court could uphold the discharge on grounds rejected by the school committee, thereby impermissibly intruding upon that body's executive function.

These arguments may well misconceive the nature of "de novo" review as provided for by § 43A. That statute requires the Superior Court to determine "whether the school committee acted on the evidence rather than out of bias, political pressure, or other improper motive," *Springgate* v. *School Comm. of Mattapoisett,* 11 Mass. App. Ct. 304, 305-306 (1981), by a process of "de novo review, [in which] the findings of fact of the school committee carry no evidentiary weight." *Id.* at 306. "The provision in G. L. c. 71, § 43A [inserted by St. 1958, c. 462], to 'hear the cause "de novo"'' reads as a mandate to determine anew whether the charge or charges are substantiated." *MacKenzie* v. *School Comm. of Ipswich,* 342 Mass. 612, 614 (1961). Thus we have stated that in reviewing a § 42 teacher dismissal under § 43A, the Superior Court is "not confined to reviewing a record," *Springgate, supra* at 306, as it would be in a case considered under G. L. c. 30A, § 14(5). We have also stated that § 43A creates "manifestly . . . broader review than is mandated by G. L. c. 30A, § 14, and like judicial review statutes," and we have expressly held that "no findings are required" of a school committee for purposes of Superior Court review under § 43A. *South Middlesex Regional Vocational Technical Sch. Dist. Comm.* v. *Superior Court,* 9 Mass. App. Ct. 372, 376 (1980). See also *Wishart* v. *McDonald,* 500 F.2d 1110, 1115 (1st Cir. 1974) (In a de novo hearing under § 43A, the teacher "would seek not some restrictive 'review' in state court, but would receive an entirely new hearing at which the school committee has the burden of supporting the discharge"). These cases indicate that when a tenured teacher who has been dismissed by a school committee pursuant to G. L. c. 71, § 42, elects de novo review in Superior Court pursuant to G. L. c. 71, § 43A, that process (1) supplants any fact-finding function the school committee may have; (2) transfers the function of

finding facts to the Superior Court; and (3) requires the
Superior Court, solely on its view of the evidence before *it*,
to make a fresh determination "whether the evidence sub-
stantiates the charges made by the school committee,"
*Springgate, supra* at 306, and warrants the teacher's dismis-
sal.[5]   These cases also suggest that the focal point of Superi-
or Court review is whether a cause for discharge is substan-
tiated, and that, if one is, the school committee's decision to
dismiss must stand.   As stated in *MacKenzie* v. *School
Comm. of Ipswich, supra* at 614-615, the case "on appeal
. . . is not what action is appropriate or wise, the offences
being established; it is, has the teacher offended in the way
charged?"   All of this works to the advantage of the teacher
in most instances through procedures which have been care-
fully crafted to balance the ultimate prerogative of the com-
mittee — to maintain or terminate the employment rela-

---

[5] The precedent furnished us by Kurlander is not helpful.   *Graves* v.
*School Comm. of Wellesley,* 299 Mass. 80 (1937), and *Moran* v. *School
Comm. of Littleton,* 317 Mass. 591 (1945), discuss the inadequacy of com-
mittee hearings where no evidence at all is presented (*Graves*) or where
evidence is considered which has been withheld from the teacher
(*Moran*).   Neither infirmity was present here.   To the extent that these
cases relate to the standard of review, we note that both predate the de
novo review procedure of G. L. c. 71, § 43A, which was added by St.
1958, c. 462.

The cases which Kurlander cites from other jurisdictions for the propo-
sition that due process requires specific findings are equally unhelpful
since they do not involve de novo review procedures like ours. See, e.g.,
*Kinsella* v. *Board of Educ. of Cent. Sch. Dist. No. 7,* 378 F. Supp. 54, 60
(W.D.N.Y. 1974), aff'd, 542 F.2d 1165 (2d Cir. 1976); *Staton* v. *Mayes,*
552 F.2d 908 (10th Cir.), cert. denied, 434 U.S. 907 (1977).   *Moore* v.
*Ross,* 687 F.2d 604 (2d Cir. 1982), cert. denied, 459 U.S. 1115 (1983), in-
volved an arguably distinguishable form of "de novo" review wherein
determinations of eligibility for unemployment benefits were appealable
first to an administrative law judge, who was required to render a written
decision, then to an Unemployment Insurance Appeal Board, which as a
matter of "policy and practice" reviewed the decision "de novo" without
necessarily conducting a hearing, and thence to the courts.   The court
held that a "cursory" opinion of the Appeal Board, "alerting both the parties
and any reviewing court to the decision's broad basis" would satisfy due proc-
ess.   *Id.* at 610.   If this standard were applied here, the committee's public
vote on the substantiation of the causes of unbecoming conduct, insubordina-
tion and inefficiency would appear to satisfy the requirement.

tionship — with the special safeguards afforded by plenary judicial review.

There is no need, however, to decide in this case whether the Constitution or G. L. c. 71, §§ 42 and 43A, mandate that a school committee designate which charges have been proven. The record shows that Kurlander was not subjected to any special unfairness by reason of the school committee's failure to provide such specific findings. It is undisputed that Kurlander received all the procedural safeguards required by G. L. c. 71, § 42, including written notice of the charges, time to prepare his response, and a hearing at which he was represented by counsel, and had the rights to present evidence and call witnesses. As noted earlier, the case before the judge was, by express agreement of Kurlander and the committee, the same in all respects as the case presented to the committee. No new causes or charges were introduced before the Superior Court. There is no question that the charges related to the incidents of March 20 and 21, 1978, were the most serious before the committee. The testimony of Gagnon, Madden and Renzi as to the incidents of March 20 and 21, was consistent, portraying Kurlander's behavior on those dates (much of it in front of his students) as insolent, abusive, loud and out of control. No substantial doubt as to the occurrence of these events was raised by Kurlander's failure to recollect some of the remarks he made, his explanation of his occasional use of "theatrics," and his characterization of all his actions as well-intended. In light of the evidence, we think Kurlander could not reasonably have read the committee's unanimous vote that the cause of unbecoming conduct had been substantiated as anything other than a determination that the charges arising out of the events of March 20 and 21 had been proven. In this particular respect, the vote resembled a general verdict of a jury. The record therefore furnishes no basis for a claim that Kurlander was prejudiced because he was unaware that the committee had found those allegations substantiated.

Similarly, Kurlander cannot claim that the judge based his decision on grounds other than those relied upon by the committee, since the judge, having independently found the same facts, decided that the incidents of March 20, 1978, and the subsequent discussions were sufficient to justify dismissal. This determination was correct; an incident of unbecoming conduct substantively similar was found sufficient to warrant a tenured teacher's dismissal in the *MacKenzie* case, 342 Mass. at 616-617. Since Kurlander could not reasonably claim to be unaware that the charges related to the incidents of March 20 and 21 had been found substantiated by the committee and because the judge based his decision on those same incidents, the lack of findings by the committee as to the remaining charges could not (even on Kurlander's assumptions) rise above the level of harmless error, and certainly not to the level of negating a constitutional right. Having found major charges established, the judge was not obliged to pore over the evidence to make findings concerning the other charges aired before the committee. Notwithstanding the possibility that implications adverse to Kurlander's reputation might be drawn from the failure to make findings on all charges (see note 3, dissenting opinion, *infra*), it is not the duty of the school committee or the Superior Court in these cases to operate with an eye to easing the task of resume-writing for a teacher who is properly discharged for cause.

The judge's rulings of law were also sound. The judge was aware of the court's function,[6] and his ultimate ruling that the committee's action was "justifiable" reflects a conclusion (necessary to affirmance of a dismissal under § 43A)

---

[6] The judge made liberal reference to the standards discussed in *Springgate,* specifically ruling that "[u]nder G. L. c. 71, § 43A, the Superior Court hears the cause *de novo,* reviews the action of the School Committee, and determines 'whether the evidence substantiates the charges made by the School Committee.' *Springgate* v. *School Committee of Mattapoisett,* 11 Mass. App. Ct. 304, 306 (1981)." His detailed memorandum leaves little doubt that he appreciated the axiom underlying §§ 42 and 43A, stated in *Springgate* (at 305), that "[r]eview is not managerial in nature . . .; review is quintessentially judicial."

that there was a firm foundation in fact for the dismissal of Kurlander for a cause charged under § 42. The ultimate nondelegable decision of the committee — to terminate the employment relationship by dismissing Kurlander — was also respected by the judge, in conformance with the principle that "[i]t is not a judicial function . . . under . . . § 43A to assess the gravity of a school committee's charges or the appropriateness or wisdom of its action. The permissible grounds for dismissal under G. L. c. 71, § 42 — inefficiency, incapacity, conduct unbecoming a teacher, insubordination, and other good cause — include any ground which is not arbitrary, irrational, unreasonable, in bad faith, or irrelevant to the committee's task of running a sound school system." *Springgate,* 11 Mass. App. Ct. at 308. We conclude that while a committee might be well-advised to make a simple statement of the charges found proven (and a teacher not receiving such a statement may wish to immediately request one before the committee adjourns and, failing that, make such a request before, or simultaneously with, filing an action under § 43A), there was no impairment of any constitutional or other right due Kurlander in the committee's failure to do so here since it must have been clear to Kurlander that the charges to which we have referred were found substantiated by the committee's vote sustaining the cause of unbecoming conduct,[7] and those same charges formed the basis for the judge's decision.

2. The operative provision of the open meeting law, G. L. c. 39, § 23B, as appearing in St. 1976, c. 397, § 6, provides that, with certain exceptions, "[a]ll meetings of a governmental body shall be open to the public." This general rule is subject, however, to the express qualification of G. L. c. 39, § 24, that it "shall be in force only so far as [it is] not inconsistent with the express provision of any gen-

---

[7] For these reasons, we see no merit to Kurlander's other arguments to the effect that there was insufficient evidence to warrant the judge's conclusion that the school committee's action was justified. The arguments are premised on the restrictive notion of review with which we have already dealt.

eral or special law." The hearing on the present case was conducted pursuant to G. L. c. 71, § 42, which provides that the dismissal hearing of a tenured teacher "may be either public or private at the discretion of the school committee." At issue is whether the "hearing" which the committee is privileged to hold in private includes the committee's deliberations, the only portion of these proceedings which were closed to the public. On that issue, the plaintiffs in the open meeting law case appear to acknowledge that the quoted provision of c. 71, § 42, is, on its face, inconsistent with the open meeting law. They urge, however, that the inconsistency does not extend to the facts of this case because the term "hearing" should be interpreted to exclude the deliberative phase of proceedings before a school committee.

We reject the plaintiffs' approach. Although the term "hearing" is not expressly defined in either c. 71 or c. 39, it appears to constitute a category of "meeting," which is defined in G. L. c. 39, § 23A, inserted by St. 1975, c. 303, § 3, as "any corporal convening *and deliberation* of a governmental body" (emphasis supplied). We think this definition encompasses "hearings" under § 42, including the committee's deliberations. We disagree with the suggestion that this interpretation amounts to judicial legislation. Our interpretation derives from, and comports with, the Legislature's unambiguous and broadly descriptive definition of a clearly analogous term. We also deem significant the legislative intent expressed in the plain language in which § 42 is framed: to grant school committees the option to keep private the sensitive matters which may surface in the course of proceedings relating to dismissals of tenured teachers. A court must see that this purpose is enforced, see *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974); *Moynihan* v. *Arlington*, 6 Mass. App. Ct. 960, 961 (1978), and not frustrated by approval of an anomaly, see *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 355 (1973), such as might result from an interpretation which would permit a committee to hold a closed hearing

for the taking of evidence, but would require it under G. L. c. 39, § 23B, to open its deliberative discussions of that same evidence to the public.[8] We conclude that an inconsistency rising to the level of "positive repugnancy," see *Yaro* v. *Board of Appeals of Newburyport,* 10 Mass. App. Ct. 587, 589 (1980), exists between the open meeting law, which declares in G. L. c. 39, § 23B, that "[a]ll meetings . . . shall be open," and G. L. c. 71, § 42, which confers on school committees the right, in the exercise of discretion, to conduct dismissal hearings in public or private.[9] The specific terms of the latter override the former, general provision. G. L. c. 39, § 24.

Finally, there is no reason to overturn the judgment on the basis of the plaintiffs' two remaining arguments: (1) that a school committee, having once voted, as here, to hold an open meeting, may not subsequently choose to close a discrete part of it, and (2) that the lack of a formal vote to close deliberations to the public is fatal to the validity of the proceedings. As to the first contention, a committee could reasonably conclude that the deliberative portion of a hearing like this might necessitate frank discussion of sensitive material. Having unfettered discretion by statute to close

---

[8] Compare the different circumstances so far as confidentiality is concerned which pertained in *Milton Commons Associates* v. *Board of Appeals of Milton,* 14 Mass. App. Ct. 111, 112-115 (1982), a case not involved with the open meeting law.

[9] We note the judge's observations that, unlike the provision of G. L. c. 71, § 42, which controls this case, "the provision governing dismissal of a non-tenured teacher, who has served for more than ninety days, does not specify that the hearing before the school committee, which is provided therein, may be public or private, at the school committee's option. Although this court is unable to discern the Legislature's rationale, it appears to have specified different hearing requirements for tenured and non-tenured teachers. Only the latter would be subject to the Open Meeting Law." See *Puglisi* v. *School Comm. of Whitman,* 11 Mass. App. Ct. 142 (1981). We do not speculate on whether the Legislature intended different standards or whether the discrepancy is the result of oversight. Any patching of the statutes is the Legislature's prerogative, not ours. See *Ocean Spray Cranberries, Inc.* v. *State Tax Commn.,* 355 Mass. 592, 597 (1969).

all of the hearing or none of it, the committee offends no rule or policy by exercising less than its whole right. As to the second contention, no objection was made by Kurlander, any committee member or anyone else to the committee's failure to vote formally to close deliberations to the public. Moreover, that failure appears not to have been made an issue before the Superior Court. (We have no transcript of the Superior Court proceedings, but the judge's detailed findings and rulings contain no reference to any such argument.) The issue involves a question of formal protocol which could easily have been resolved by the committee (perhaps to the satisfaction of everyone) had a timely objection been made. In the absence of a ground level objection or the matter being raised below, we decline to pass on the question.

*Judgments affirmed.*

WARNER, J. (dissenting). I disagree with the holding of the majority in Kurlander's case (part 1 of the opinion).

The majority hold that in light of the evidence presented to the school committee Kurlander could not reasonably have read the committee's vote on the cause of unbecoming conduct as anything other than a vote that the first four charges had been substantiated, and that he was not, therefore, prejudiced by the failure of the committee formally to state which charges it found substantiated. The majority hold further that the judge based his decision on the same four charges *relied* on by the committee.

Kurlander was first advised by the committee that the superintendent of schools had proposed his discharge for the *causes* of inefficiency, unbecoming conduct, insubordination and "other good cause." As the majority note, these are generic causes for dismissal provided by G. L. c. 71, § 42. Kurlander then exercised his acknowledged right (*ibid.*) to request written *charges* of the *causes* assigned by the committee. A list of fourteen specific charges was given. See the

Appendix.   After  extensive  hearings  the  committee deliberated in private (and so we cannot determine from our own examination of the record which of the charges it found substantiated — nor could the Superior Court judge have done so), and then, in public session, unanimously voted that the "charges" of conduct unbecoming a teacher, insubordination and inefficiency had been substantiated, and to dismiss.

A close reading of the transcript of the evidence presented to the committee makes clear that it was open to the committee to find the first four charges not substantiated. Each of the charges involves allegations of language characterized as "intemperate, insolent and inappropriate," and conduct as "inappropriate." Most of the testimony against Kurlander on these charges was in conclusory terms, using the same or similar characterizations as set forth in the charges. Kurlander disputed those characterizations.

Most, if not all, of the remaining ten charges, if substantiated, would have been sufficient to support dismissal for the cause of conduct unbecoming a teacher, and these and the first four charges, if substantiated, would have been sufficient to support dismissal for the cause of insubordination. Further, the causes assigned for Kurlander's dismissal included "inefficiency." The first four charges do not in any way allege conduct which would support this cause, and it may reasonably be assumed, therefore, that some other charge was found substantiated by the committee. The record is devoid of any statement by the committee of which of the fourteen charges, standing alone or in combination,[1] it found substantiated and sufficient to support dismissal for the causes of conduct unbecoming a teacher, insubordination and inefficiency. While the majority's conclusion that the committee found the first four charges substantiated

---

[1] It is conceivable that the committee could have decided that the first four charges together, or considered separately, would not support dismissal, but when considered with other charges which it found substantiated, would support dismissal on one or more of the statutory causes. Such considerations are the prerogative of the committee.

and sufficient to support dismissal may be a good guess, it is nonetheless a guess.

The majority do not find it necessary to decide the issue, but suggest that while a teacher has a right to a statement of the specific charges alleged to support the causes for which his dismissal is proposed, he may have no right to a statement by the committee of which of those charges it finds substantiated.[2] In my view, to state the proposition is to demonstrate its fundamental unfairness.[3] Such a rule would result in a denial of procedural due process. Further, it would be inconsistent with the provisions of G. L. c. 71, § 42, and a misconception of the nature of the de novo review proceedings in the Superior Court under G. L. c. 71, § 43A.

General Laws c. 71, § 42 (as in effect in 1978), provided the generic causes for the dismissal of a tenured teacher, and for the furnishing of written charges to support those causes. It also dictated that there could be no dismissal "unless the charge or charges shall have been substantiated." Here the committee made no such determination on the record, other than that which the majority find implicit in the vote to dismiss for the cause of conduct unbecoming a teacher.

The reliance by the majority on *Springgate v. School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304 (1981) (hereafter *Springgate*), is misplaced. A reading of that case reveals that the school committee found ten of eleven *charges* "proved," and that the Superior Court and this

---

[2] Curiously, the majority conclude the discussion of the question by stating that a school committee "might be well-advised to make a simple statement of the charges found proven."

[3] It is obvious that Kurlander, and any teacher in similar circumstances, may have legitimate interests beyond the dismissal proceeding in having express determinations by the school committee on the specific charges, and review by a court of those determinations found substantiated. The possibility of future adverse consequences to Kurlander as a result of the committee's failure to make determinations on ten charges (accepting for this purpose the majority's view) should be apparent, especially where, as noted, it may be assumed that the committee found at least one, involving the cause of inefficiency, substantiated.

court, in considering the case under the de novo principles mandated by G. L. c. 71, § 43A, reviewed the committee's action on the *charges* found *proven* by it.[4] De novo review under § 43A means review of the *decision* of the school committee. Inextricable parts of that decision, I suggest, are the conclusions of the committee on the charges brought.[5] "Review is not managerial in nature, however; review is quintessentially judicial and management is executive in quality. The statute [§ 43A] does not invest the court with power to establish criteria for dismissing a teacher and initiating proceedings. Rather the statute confers upon the court the limited function of determining whether the school committee acted on the evidence rather than out of bias, political pressure, or other improper motive." *Springgate, supra* at 305-306. If the majority's suggestion were the rule, it would mean that, at least where there are multiple charges, the Superior Court judge, in the exercise of de novo review, could decide that dismissal of a teacher was justifiable on charges which were not found substantiated by the school committee.[6] Surely then, the judiciary would be "made to trespass on executive prerogatives." *Springgate, supra* at 305. See *MacKenzie* v. *School Comm. of*

---

[4] An examination of the record in this court in *Springgate* shows that the school committee recorded its findings of "proven" or "not proven" on each of eleven charges brought against the teacher, and as to the one charge it found "not proven," the Superior Court judge ruled that it was not before him. This court implicitly approved that ruling.

[5] I agree that a school committee is not obligated to make findings of fact to support its dismissal action.

[6] Such a result follows in this case because the judge could not know, absent some indication by the school committee, which charges the committee found substantiated and sufficient to support dismissal. The majority acknowledge that the judge did not make findings on all of the charges. He found, on review of the transcript of testimony before the committee, that Kurlander's conduct during and after one incident, involving at most four of the fourteen charges, was sufficient to justify dismissal. There is nothing in the record to indicate that the committee shared the judge's view that the charges relating to that incident were substantiated and sufficient to support dismissal. In short, the judge could not possibly know what the *decision,* which he was charged with reviewing, was.

*Ipswich,* 342 Mass. 612, 615-616 (1961). "If there is ground for dismissal, the decision is for the school committee, and it is not the court's function to consider whether the committee's action is appropriate or wise. *MacKenzie* v. *School Comm. of Ipswich, supra* at 614-615, and 618." *Lower* v. *North Middlesex Regional Sch. Comm.,* 8 Mass. App. Ct. 536, 540 (1979). See *Driscoll* v. *Mayor of Somerville,* 213 Mass. 493 (1913). I think that principle cuts both ways, i.e., if the school committee decides that a charge is not substantiated, the court, on de novo review, ought not to override that decision.

The right to de novo review under G. L. c. 71, § 43A, is the *teacher's.* It should not be necessary to point out that an appellant — which Kurlander was here — ordinarily seeks review only of those determinations adverse to him. If the school committee determines that a charge brought by *it* is not substantiated, that should be the end of it as to that charge. Kurlander was entitled to a statement of those determinations. To hold as the majority suggest would be to open the door for substitution of the judgment of the court for that of the school committee.

I would vacate the judgment and remand the case to the Superior Court for remand to the school committee for a statement of which of the fourteen charges it found substantiated and sufficient to support dismissal,[7] and for further de novo review in the Superior Court of Kurlander's dismissal on the basis of the charges found substantiated.

---

[7] The vote of dismissal was unanimous. If the majority of the school committee now in office participated in the vote, I would permit them to make the statement. Otherwise, I would require that the presently constituted committee hold a new dismissal hearing, affording Kurlander all of the procedural safeguards, including written charges if he so requests, provided by G. L. c. 71, § 42. In the event of such a hearing, de novo review under § 43A would be available to Kurlander on the charges expressly found substantiated by the committee.

APPENDIX

"1. That Mr. Kurlander did, on or about March 20, 1978, and in the presence of elementary school students make intemperate, insolent and inappropriate remarks to Helen G. Renzi and that he did behave in an inappropriate manner at that time.

"2. That Mr. Kurlander did, on or about March 20, 1978, and in the presence of elementary school students make intemperate, insolent and inappropriate remarks to Ronald J. Gagnon, when Mr. Gagnon attempted to video tape the class, and that he did behave in an inappropriate manner at that time.

"3. That Mr. Kurlander did, on or about March 20, 1978, make intemperate, insolent and inappropriate remarks to Mrs. Renzi, when she endeavored to discuss the foregoing incidents with Mr. Kurlander, and that he did behave in an inappropriate manner at that time.

"4. That Mr. Kurlander did, on or about March 21, 1978, make intemperate, insolent and inappropriate remarks, and did behave in an inappropriate manner in the presence of Superintendent John Madden, Mrs. Renzi, or both of them, following delivery of a letter from Superintendent Madden dated March 21, 1978, relative to the suspension of Mr. Kurlander.

"5. That Mr. Kurlander did, on numerous and divers dates, fail to submit adequate and timely bi-weekly plans, contrary to the express instructions of his superiors, and in breach of his duties, including those incidents set forth in the correspondence of Superintendent Madden to Mr. Kurlander dated November 14, 1977, and previously delivered to counsel for Mr. Kurlander, and on April 3, 1978.

"6. That Mr. Kurlander did fail to satisfactorily perform his responsibilities, in a timely manner, with regard to a curriculum development project scheduled for completion in August 1976.

"7. That Mr. Kurlander did fail to satisfactorily perform his duties in the Developmental Center, and was relieved of those responsibilities due to his propensity to arrive late, his unrealistic expectations for the children and his difficulty in accepting the authority of the teacher in charge of the educational program.

"8. That Mr. Kurlander did fail to perform various duties associated with his position, including but not limited to bus duty assignment, so-called, on or about January 16, 17, 19 and 23-27, 1978, and other divers dates.

"9. That Mr. Kurlander did effect a unilateral change in the teaching schedule, contrary to the express instruction of his superior.

"10. That Mr. Kurlander's behavior did engender complaints from parents relating to his treatment of students, including but not limited to the tearing of a student's jacket in or about October of 1977, and the embarrassing of a student in or about January of 1978 as she was leaving class for a violin lesson.

"11. That Mr. Kurlander did, contrary to the instructions of his superiors and in breach of his duties, fail to leave adequate lesson plans for substitute teachers on divers dates, including June 2, 1977.

"12. That Mr. Kurlander did fail, on numerous and divers dates, to keep his classroom in a clean and safe condition, contrary to the express instructions of his superiors, and in breach of his duties.

"13. That Mr. Kurlander's course of conduct exhibited a failure on his part to cooperate and comply with the instructions of his superiors, and a disregard for their express instructions.

"14. That Mr. Kurlander's course of conduct exhibited a failure on his part to adequately perform the responsibilities and tasks attendant to his employment and assigned to him by his superiors."