ROBERT PERRYMAN & another[1] vs. SCHOOL
COMMITTEE OF BOSTON
(and a companion case[2]).

Suffolk.   November 29, 1983. — December 30, 1983.

Present: HALE, C.J., KAPLAN, & PERRETTA, JJ.

*Public Employment.   School and School Committee*, Suspension of teach-
er.   *Public Board.   Open Meeting Law.   Words,* "Misconduct in
office."

Two teachers indicted for welfare fraud could be suspended under G. L.
c. 268A, § 25, as being "under indictment for misconduct in . . .
office." [347-351]

A school committee deliberating the proposed suspension of two teachers
did not violate G. L. c. 39, §§ 23A-23C, the open meeting law, by
holding an executive session, over the objection of the teachers, where
it was apparent during the open portion of the meeting that the
deliberations would involve discussion of anticipated litigation, and
where the teachers and their attorney were present at the executive ses-
sion. [351-353]

A school committee conducting deliberations in a closed session did not
violate G. L. c. 39, § 23B(7), by failing to record portions of their
discussions. [353]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on October 20, 1982.

The cases were heard by *Young, J.*

The case was submitted on briefs.

*Matthew E. Dwyer* for Robert Perryman & another.

*Michael J. Betcher & Mary Jo Hollender,* Special Assist-
ant Corporation Counsel, for the defendant.

---

[1] Carolyn Perryman.

[2] In the companion case Donnie R. Cooper, Louise Walker, and Willie
A. Perryman, as they are three registered voters of Suffolk County (see
G. L. c. 39, § 23B), have sued the school committee of Boston.

PERRETTA, J.   By these consolidated appeals we are asked to decide whether the holding in *Dupree* v. *School Comm. of Boston,* 15 Mass. App. Ct. 535 (1983), that a teacher's possession of cocaine with intent to distribute it constitutes "misconduct . . . in . . . office or employment" within the scope of G. L. c. 268A, § 25, is applicable to two tenured teachers suspended under that statute because of their indictments on charges collectively described as welfare fraud.[3]   The manner in which the school committee conducted the meeting, held to determine whether to suspend the teachers, also gave rise to an action by three registered voters, alleging violations of G. L. c. 39, § 23B, the open meeting law.   We conclude on both appeals that the school committee acted properly.

1.   *The Suspensions.*

After the school committee's vote on October 5, 1982, to suspend Robert Perryman and Carolyn Perryman (the teachers) under G. L. c. 268A, § 25, the teachers brought an action pursuant to G. L. c. 231A, seeking a declaration that they could "not be suspended without full compliance with G. L. c. 71, § 42D."[4]   They also sought reinstatement to their teaching positions as well as damages in an amount equal to the salaries withheld from them on account of their suspensions.

An appeal was pending in *Dupree* v. *School Comm. of Boston,* at the time of the judgment in the instant case.[5]

---

[3] On September 26, 1982, Robert Perryman and Carolyn Perryman were indicted for larceny on the basis of their alleged receipt of $32,000 in public assistance funds.   Carolyn Perryman was also indicted for allegedly making false representations to the Department of Public Welfare.

[4] General Laws, c. 268A, § 25, inserted by St. 1972, c. 257, allows for the suspension of city employees "during any period such . . . employee is under indictment for misconduct in such . . . employment," whereas G. L. c. 71, § 42D, as amended through St. 1975, c. 316, provides that a teacher may be suspended "for unbecoming conduct or other good cause" but that "[n]o teacher . . . shall be suspended for a period exceeding one month."

[5] There the trial judge had held that the school committee had no authority under G. L. c. 268A, § 25, to suspend the teacher without pay during the pendency of the criminal proceedings against him. *Dupree* v. *School Comm. of Boston,* 15 Mass. App. Ct. at 536.

The trial judge concluded, and the judgment so declares: "The School Committee has previously litigated to a final judgment its authority under G. L. c. 268A, § 25, to suspend a public school teacher, indicted while in public service, but for misconduct that is unrelated to the direct discharge of public responsibilities, and has had that issue determined adversely to it . . . . It is therefore precluded from relitigating the same issue."

The judgment further provides that the teachers are entitled to their salaries, including back pay and fringe benefits, until such time as the criminal charges, "taken severally, result in a conviction," or until a reversal of the trial court's ruling and judgment in *Dupree,* or until further order of the trial judge, "whichever shall occur first." The record before us indicates that the first of these events to have occurred is the *Dupree* reversal.[6]

Whether the school committee has the authority to suspend the teachers under G. L. c. 268A, § 25, depends on the breadth of the term "misconduct in office." That a direct relationship between the misconduct and the office must exist is forcefully demonstrated in *Tobin v. Sheriff of Suffolk County,* 377 Mass. 212, 213 & n.3 (1979). There it was noted that a deputy sheriff serving as a court officer could not be suspended under G. L. c. 268A, § 25, because the offense for which he had been indicted was not misconduct in his office or employment. For a detailed description of the nature of those allegations against Tobin, see *Commonwealth v. Borans,* 379 Mass. 117 (1979). It is here sufficient to relate that the allegations concerned a "kick-back"

---

[6] The school committee takes the position that, in light of *Dupree,* the judgment has no "operative effect" on the suspensions, and, therefore, it makes no argument concerning the trial judge's conclusion under the doctrine of issue preclusion.

The school committee's brief also informs us that on some unspecified date Carolyn Perryman pleaded guilty to the indictments. As a result of her guilty pleas, the school committee dismissed her under G. L. c. 71, § 42. She appealed from her dismissal to the Superior Court Department. G. L. c. 71, § 43A. We, of course, intimate no view on those proceedings as they are not before us and may even no longer be pending.

scheme tied to the awarding of contracts by the city. Although some of the offensive conduct was alleged to have occurred on the premises of the courthouse, courthouse business was neither involved nor implicated in the allegations. *Id*. at 122-126. Thus, the applicability of G. L. c. 268A, § 25, in any given instance is controlled by the duties and obligations accompanying the particular employment.

There are certain forms of employment which carry a position of trust so peculiar to the office and so beyond that imposed by all public service that conduct consistent with this special trust is an obligation of the employment. See, e.g., *Huntoon* v. *Quincy*, 349 Mass. 9, 14 (1965) (police officers); *Matter of Bonin*, 375 Mass. 680, 709 (1978) (judges); *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. at 538 (teachers).

Teachers hold a position of special public trust because "[a]s role models for our children they have an 'extensive and peculiar opportunity to impress [their] attitude and views' upon their pupils." *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. at 538, quoting from *Faxon* v. *School Comm. of Boston*, 331 Mass. 531, 534 (1954). See also Reutter & Hamilton, The Law of Public Education 484 (2d ed. 1976). It is this special public trust which distinguishes *Tobin* from *Dupree* v. *School Comm. of Boston*, 15 Mass. App. Ct. at 539.

Teachers are not required to comport themselves in a manner approved by all segments of a community in order to meet the obligations of their office. See, e.g., *Fisher* v. *Snyder*, 476 F.2d 375 (8th Cir. 1973) (school board acted arbitrarily in dismissing a teacher because of a "strong potential of sexual misconduct" demonstrated by her allowing unrelated male guests to remain over night at her one-bedroom apartment); *Morrison* v. *State Bd. of Educ.*, 1 Cal. 3d 214 (1969) (a teacher's unfitness to teach was not established by the fact of his one-week, noncriminal, homosexual relationship with another teacher). Compare *Scott* v. *Board of Educ.*, 20 Ill. App. 2d 292 (1959) (teacher's dismissal was required in "the interests of the school"

because of publicity and community concern over her recurrent arrests for public intoxication). See generally Reutter & Hamilton, The Law of Public Education, at 482-491.

We are not here involved with a matter of a teacher's private activities or classroom competence.

Our question is whether a teacher's off-duty conduct resulting in an indictment constitutes misconduct in office. The answer depends upon whether that conduct violates the special trust inherent in that office. *Dupree* v. *School Comm. of Boston,* 15 Mass. App. Ct. at 538-539. Cf. *Huntoon* v. *Quincy,* 349 Mass. at 14. Although a position of special public trust imposes additional obligations on certain public employees, an act resulting in an indictment is not, per se, a breach of that trust. There must be a direct relationship between the activity and the trust before the conduct in question can be said to constitute misconduct in office within the comprehension of G. L. c. 268A, § 25.[7]

That relationship was found to exist in *Dupree* v. *School Comm. of Boston,* 15 Mass. App. Ct. at 538-539: "The school committee could reasonably have decided that the plaintiff's alleged conduct with respect to drugs violated a 'known and significant . . . duty inherent in the obligations of his office' . . . which severely impaired his value as a teacher and was in direct conflict 'with the message his teaching should impart'" (citations omitted).

Although the allegations against the teachers — lying and stealing — do not conflict with an expression of duty such as that found impressive (G. L. c. 71, § 1, seventh sentence)

---

[7] Activity rising to the level of misconduct in office under G. L. c. 268A, § 25, would also be a ground for suspension under G. L. c. 71, § 42D, see note 4, *supra,* although the reverse does not follow. However, where a teacher is suspended for grounds set out in an indictment, the cause for the suspension, allegations of misconduct in office, will nearly always continue beyond the limited suspension period contained in § 42D. Faced with a teacher's return to the classroom while under the cloud of an indictment, a school committee could instead opt for dismissal. "[I]n some cases that may be a draconian remedy," *Dupree* v. *School Comm. of Boston,* 15 Mass. App. Ct. at 540, especially in view of the alternative provided by G. L. c. 268A, § 25.

in *Dupree,* they nonetheless conflict with the obligations imposed on teachers by G. L. c. 71, §§ 30, 38, and 38G, which can be collectively described as requiring teachers to be of such "moral character" as to be able to instruct students on the basic values of our society.

We are aware that these statutes may be too abstract for consideration in certain circumstances (especially those connected to the expression of thought) and that it sometimes may be difficult to draw the line between misconduct and misconduct in office. Such is not the case here.

The teachers' alleged conduct directly contradicts the most fundamental values which all segments of our society expect teachers to inculcate in the children entrusted to them.

As it relates to a teacher's position of special public trust, we do not view lying to and stealing from the public as so significantly different from possession of cocaine with intent to distribute as to allow us to reason that the former is simply misconduct whereas the latter is misconduct in office. Accordingly, we conclude that the indictments allege conduct so inimical to the obligations imposed by reason of a teacher's position of special public trust that *Dupree* controls.

2. *The School Committee Meeting.*

The procedures employed by the school committee at its meeting held to consider whether the teachers should be suspended prompted three registered voters of Suffolk County to bring a complaint seeking a declaration that the school committee had violated the open meeting law, G. L. c. 39, §§ 23A-23C, specifically, § 23B, as amended through St. 1980, c. 220, § 3. The trial judge consolidated the voters' complaint with that of the teachers and concluded that the school committee's actions under the open meeting law were proper and its vote valid. We agree and take up the voters' claims seriatim.

a. *Section 23B(3).* As here pertinent, this provision allows a governmental body to meet in executive, rather than open, session "[t]o discuss strategy with respect to . . .

litigation if an open meeting may have a detrimental effect on the . . . litigating position of the governmental body."

The voters characterize the school committee's decision to go into executive session as a sham and pretext to discuss in secret the proposed suspension of the teachers. A reading of the transcript of the open portion of the meeting, however, shows discussion by the participants on the topic of the applicability of G. L. c. 268A, § 25, their various predictions on the outcome of *Dupree*, and the statement by the teachers' attorney that "the School Committee is out on a limb on this matter and . . . the Perrymans will not stop here. This is a matter that certainly will come before a Superior Court judge this week on a restraining order." The school committee's decision to meet in executive session falls within the exemption of § 23B(3). See *Doherty* v. *School Comm. of Boston*, 386 Mass. 643, 648 (1982). Compare *Puglisi* v. *School Comm. of Whitman*, 11 Mass. App. Ct. 142, 144 (1981).

b. *Section 23B(1) and (2)*. The voters contend that the teachers were forced to go forward in an executive session over their objections and notwithstanding their specific requests for an open meeting.

The teachers' requests for an open meeting did not preclude the school committee from closing a portion of the meeting, see *Kurlander* v. *School Comm. of Williamstown*, 16 Mass. App. Ct. 350, 361-362 (1983), provided they did so for one of the purposes expressly set out in § 23B, and provided that the executive session was held in accordance with specific statutory procedures. See *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. 70, 73 (1978). Section 23(B) (1) and (2) provide that where an open meeting is requested and an executive session is held, an individual shall have the right to be present at the executive session during discussion concerning that individual, who also shall have the right to speak and to the presence of counsel. Counsel may advise the individual but not actively participate in the executive session.

As earlier noted, the decision to go into executive session was made for an appropriate reason and after counsel for the teachers had openly addressed the school committee. Portions of the transcript of the executive proceedings show that the teachers were present but chose not to exercise their right to speak on their own behalf because of the pending indictments. Although not required to do so, the school committee allowed the teachers' attorney to address them again in executive session.

The school committee did more than it was required to do, and we see no violation of the procedures mandated by § 23(B) (1) and (2).

c. *Section 23(B) (7), fourth par.* The voters construe this provision, which in pertinent part requires a governmental body to "maintain accurate records of its meeting, setting forth the date, time, place, members present or absent and action taken at each meeting, including executive sessions," as precluding the school committee from going "off the record" during certain portions of their discussions in executive session.

The argument assumes that executive session discussions must be transcribed or recorded in some fashion. The assumption, however, is erroneous, and even where such discussions are gratuitously transcribed or recorded, they would not constitute part of the record required to be maintained and made available in certain instances upon request. See G. L. c. 66, § 5A; G. L. c. 39, § 23B(7), fourth & fifth pars. Cf. *Globe Newspaper Co. v. Boston Retirement Bd.*, 388 Mass. 427, 441 (1983).

3. *Conclusion.*

The judgment on the teachers' complaint is reversed, and the matter is remanded to the Superior Court Department for entry of a judgment declaring that the school committee properly suspended the teachers under G. L. c. 268A, § 25. The judgment on the voters' complaint is affirmed.

*So ordered.*